915 A.2d 53 (2007)
390 N.J. Super. 218
In the Matter of the CIVIL COMMITMENT OF T.J.N.
Superior Court of New Jersey, Appellate Division.
Argued telephonically December 21, 2006.
Decided January 29, 2007.
*54 Brian P. Hughes, Assistant Deputy Public Advocate, argued the cause for appellant (Ronald K. Chen, Public Advocate, attorney; Mr. Hughes, on the brief).
Lisa Marie Albano, Deputy Attorney General, argued the cause for respondent (Stuart Rabner, Attorney General, attorney; Patrick DeAlmeida, Assistant Attorney General, of counsel; Ms. Albano, on the brief).
Before Judges STERN, A.A. RODRÍGUEZ and LYONS.
PER CURIAM.
T.J.N. appeals from an order of April 8, 2004 involuntarily committing him to the Special Treatment Unit under the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to .38, following a hearing at which a psychiatrist and psychologist testified for the State, and appellant and his aunt testified for the defense. The proofs and findings clearly satisfy the statutory requirements for commitment, as detailed in In re Commitment of W.Z., 173 N.J. 109, 801 A.2d 205 (2002), but appellant asserts that the background information on which the State's experts relied was misconstrued or misunderstood and constituted inadmissible hearsay. Appellant argues that without that background information, the State did not satisfy its burden of proving, by clear and convincing evidence, *55 that T.J.N. has been convicted of offenses involving sexually violent behavior, "suffers from a mental abnormality or personality disorder" and is "likely to engage in acts of sexual violence. . . ." N.J.S.A. 30:4-27.26. Specifically, appellant contends that:

POINT I THE PETITION FOR CIVIL COMMITMENT WAS INVALID ON ITS FACE AS ONE OF THE REQUISITE CLINICAL CERTIFICATES FAILED TO SUPPORT A PRIMA FACIE CASE INSOFAR AS IT FAILED TO ALLEGE THAT T.J.N. WAS HIGHLY LIKELY TO RECIDIVATE IN THE REASONABLY FORESEEABLE FUTURE.

POINT II THE DECISION OF THE COURT BELOW SHOULD BE REVERSED BECAUSE IT FAILED TO CONSIDER LESS RESTRICTIVE ALTERNATIVES.

A. THE STATE FAILED TO MEET THE BURDEN OR EVEN TO ADDRESS THE BURDEN OF SHOWING THAT IT COULD NOT REACH ITS DESIRED OBJECTIVE BY LESS RESTRICTIVE MEANS PURSUANT TO THE STRICT SCRUTINY TEST.

B. IT WAS INCUMBENT UPON THE COURT TO ADOPT T.J.N.'s DISCHARGE PLAN OR TO MOLD THE LEAST RESTRICTIVE APPROPRIATE PLAN.

C. THE RESPONDENT HAVING PROVED A PRIMA FACIE CASE THAT HIS DISCHARGE PLAN SUFFICIENTLY REDUCED THE RISK OF DISCHARGE TO LESS THAN HIGHLY LIKELY TO RECIDIVATE, THE BURDEN TO MEET THAT SHOWING SHOULD HAVE SHIFTED TO THE STATE.

POINT III BECAUSE OF THE PLETHORA OF HEARSAY THAT WAS RELIED UPON BY THE EXPERT WITNESSES, THE JUDGE SHOULD HAVE CONDUCTED A 104A HEARING IN ORDER TO MAKE FINDINGS ABOUT THE RELIABILITY OF THAT EVIDENCE AND THAT DATA.

POINT IV THE APPLICABLE CLEAR AND CONVINCING EVIDENCE STANDARD OF PROOF FOR COMMITMENT UNDER THE SVPA WAS NOT MET BY THE STATE REGARDING ANY OF THE ELEMENTS JUSTIFYING COMMITMENT UNDER THE ACT.
We reject these contentions and affirm the order under review. The issue before us is whether the State demonstrated by clear and convincing evidence that appellant has a mental abnormality or personality disorder which makes it "highly likely that [he] cannot control his [] sexually violent behavior and will reoffend" in "the reasonably foreseeable future." See W.Z., supra, 173 N.J. at 130-32, 801 A.2d 205.
In his first point, T.J.N. claims that the commitment must be vacated because Dr. Sureshbabu Kurra's certificate used in support of the petition for temporary commitment, see N.J.S.A. 30:4-27.28, failed to allege that T.J.N. was "highly likely to recidivate in the reasonably foreseeable future," as required by W.Z.[1]
*56 The point is raised as plain error following the subsequent adversarial commitment hearing. See N.J.S.A. 30:4-27.29 to .32. We decline to retroactively vacate the prior May 22, 2003 order for temporary commitment. This is particularly so because the certificate of Dr. Donald Reeves, a psychiatrist, included a handwritten statement that T.J.N. had "serious difficulty controlling his harmful sexual behavior" and was "highly likely" to commit "sexually violent" offenses if not confined to a secure facility.
Dr. Michael R. McAllister, a psychiatrist, and Dr. Natalie Barone, a psychologist, testified at the commitment hearing. Appellant complains that Dr. Barone did not interview or treat him and therefore was not qualified to render an opinion, and that both experts relied on reports that constituted inadmissible hearsay evidence. T.J.N. presented no expert testimony in opposition to that produced by the State, and the State is only statutorily required to produce "a psychiatrist on the person's treatment team," who examined him within five days of the hearing. N.J.S.A. 30:4-27.30(b).[2]
The reports of prior experts and criminal records were considered by Dr. McAllister and Dr. Barone. Dr. McAllister concluded, consistent with his written report, that:
Mr. [N.] has repeatedly engaged in sexual offenses and behaviors which were either sexually motivated or at high risk for additional sexual offenses. While imprisoned, he had repeated sexual institutional infractions.[3] He has demonstrated poor impulse control in multiple ways, as well little inclination to change and little if any remorse for his behaviors. He is at extraordinary risk to sexually reoffend if released. Actuarials are consistent with this analysis.
Dr. McAllister testified that T.J.N.'s "sexual urges continued and that he had continued difficulties controlling those sexual urges[, which] reinforces an opinion that Mr. [N.] is a risk to sexually re-offend."
Dr. Barone explained that "[N.] refused to participate" in an interview or psychological *57 testing. However, by review of "the actuarial instruments" and background, including previous evaluations, she diagnosed him as having an "antisocial personality disorder" and paraphilia along with a "high risk" to "sexually re-offend." According to Dr. Barone:
The reason I find Mr. [N.] a high risk is because this is a young ma[n] who has  who has displayed sexual deviancy for  ever since early to mid-adolescence. He continues to demonstrate an inability to control his behavior, not only his aggressive behavior, but his sexually deviant behavior. Legal consequences do not deter this man. He continues to assault even female officers while he's institutionalized; again, continues to commit sexual improprieties. He has accrued a tremendous amount of institutional infractions, many of them being sexual in nature.
His personality structure is  is not only antisocial, but severe. He has no remorse. He has no empathy for what he's done[,] and when an individual has virtually no appreciation for the wrongfulness of their acts, it really does make them likely to continue engaging in those acts.
But even more so, his historical factors, his dynamic factors, they all place him in a high risk[,] and there's utterly no mitigating factors in this case.
The judge properly considered the included hearsay for purposes of evaluating the expert's credibility, because it is the type of record information that an expert can rely on in formulating an opinion. See N.J.R.E. 703. Moreover, the trial judge could take judicial notice of the sexual offenses to which defendant pled guilty and was sentenced. See N.J.R.E. 803(c)(22).[4] Furthermore, while each case is fact sensitive, we have sustained the admissibility of hearsay as part of an expert witness' testimony at SVPA commitment hearings. See In re Civil Commitment of G.G.N., 372 N.J.Super. 42, 55-56, 855 A.2d 569 (App.Div.2004) (quoting In re Civil Commitment of J.H.M., 367 N.J.Super. 599, 612-13, 845 A.2d 139 (App.Div. 2003), certif. denied, 179 N.J. 312, 845 A.2d 137 (2004)) (with respect to reference to presentence reports); In re Civil Commitment of J.S.W., 371 N.J.Super. 217, 225, 852 A.2d 1107 (App.Div.2004) (permitting hearsay contained in presentence reports, ADTC evaluations, and an expert's opinion in affirming a commitment under the SVPA), certif. denied, 183 N.J. 586, 874 A.2d 1105 (2005); In re Civil Commitment of A.X.D., 370 N.J.Super. 198, 201-02, 851 A.2d 37 (App.Div.2004) (permitting reference to Special Treatment Unit reports); J.H.M., supra, 367 N.J.Super. at 612-13, 845 A.2d 139 ("A psychiatrist is permitted to testify about a defendant's prior criminal history in order to offer an opinion about a defendant's mental condition." Id. at 612, 845 A.2d 139.). See also In re Civil Commitment of A.E.F., 377 N.J.Super. 473, 491-92, 873 A.2d 604 (App.Div.), certif. denied, 185 N.J. 393, 886 A.2d 663 (2005); In re Civil Commitment of E.S.T., 371 N.J.Super. 562, 575-76, 854 A.2d 936 (App.Div.2004); In re Commitment of R.S., 339 N.J.Super. 507, 537-38, 773 A.2d 72 (App.Div.2001) (permitting use of "actuarial instruments"), aff'd, 173 N.J. 134, 801 A.2d 219 (2002).
The consequences of a commitment under the Act and the significant liberty interests at stake require protection as a *58 matter of due process. W.Z., supra, 173 N.J. at 125, 801 A.2d 205; see also In re Civil Commitment of E.D., 183 N.J. 536, 874 A.2d 1075 (2005). However, the commitment proceedings are not part of a "criminal prosecution" giving rise to Confrontation Clause protection under the Sixth Amendment to the Federal Constitution or Article 1, para. 10 of the New Jersey Constitution. See, e.g., W.Z., supra; State v. Bellamy, 178 N.J. 127, 835 A.2d 1231 (2003); In re Civil Commitment of J.M.H., supra, 367 N.J.Super. at 606-09, 845 A.2d 139. While the "hearsay" issue must be understood in that light, we emphasize that the SVPA statute compels expert testimony at the commitment hearing and that the State's testifying experts are subject to cross-examination, by counsel for the committee, as was done in this case. See N.J.S.A. 30:4-27.29, .30. See also N.J.S.A. 30:4-27.35 (regarding annual reviews).
As already noted, the order of civil commitment must be based on "clear and convincing evidence that an individual who has been convicted of a sexually violent offense[ ] suffers from a mental abnormality or personality disorder[ ] and presently has serious difficulty controlling harmful sexually violent behavior such that it is highly likely the individual will reoffend." G.G.N., supra, 372 N.J.Super. at 46-47, 855 A.2d 569; see also W.Z., supra, 173 N.J. at 132, 801 A.2d 205; N.J.S.A. 30:4-27.26 (defining "sexually violent predator"); N.J.S.A. 30:4-27.32(a). These standards were recognized by Judge Perretti and applied in this case, and our review of commitments pursuant to the SVPA is limited. We can only reverse a commitment for an abuse of discretion or lack of evidence to support it. See A.E.F., supra, 377 N.J.Super. at 493, 873 A.2d 604 (applying "clear abuse of discretion" standard). See also In re Civil Commitment of V.A., 357 N.J.Super. 55, 63, 813 A.2d 1252 (App.Div.), certif. denied, 177 N.J. 490, 828 A.2d 917 (2003). The record discloses no basis to upset the order under review. Moreover, the committing judges under the SVPA are specialists in the area, and we must give their expertise in the subject special deference. Cf. Cesare v. Cesare, 154 N.J. 394, 412-13, 416, 713 A.2d 390 (1998). As the record supports the conclusion, based on the totality of the evidence, that T.J.N. suffers from a mental condition that makes him highly likely to recidivate as a sex offender in the reasonably foreseeable future, we must affirm the judgment.
T.J.N. asserts that, even if he was properly classified as a sexually violent predator and supervision is warranted, he is entitled to a conditional discharge because the State has not proven that a less restrictive alternative was not appropriate. However, once the need for commitment is proven, the offender must be placed "in a `facility designated for [his] custody, care and treatment.'" In re Civil Commitment of E.D., 353 N.J.Super. 450, 457-58, 803 A.2d 166 (App.Div.2002) (quoting N.J.S.A. 30:4-27.32(a)). See also N.J.S.A. 30:4-27.32(a), (b), .34(a) and .36. If the difficult commitment burden is satisfied, release should follow only "when a court is convinced that he or she will not have serious difficulty controlling sexually violent behavior and will be highly likely to comply with the plan for safe reintegration into the community." W.Z., supra, 173 N.J. at 130, 801 A.2d 205. But even assuming that appellant's argument is correct that the State had a burden to disprove at the initial commitment hearing that T.J.N. "could not control [himself] or mitigate his risk through alternative less restrictive means," the lay testimony of T.J.N.'s aunt, F.J., regarding community and family support, cannot provide a basis *59 for concluding that the State did not meet its burden that T.J.N. was both a sexual offender with a mental illness highly likely to recidivate and in need of commitment in a secure facility.
Affirmed.
NOTES
[1] Appellant was serving a period of incarceration and was scheduled to "max out" when the petition was filed. Accordingly, the petition was filed under N.J.S.A. 30:4-27.28(c), and the State acknowledges that "two clinical certificates . . . at least one of which is prepared by a psychiatrist" were required. Ibid. Dr. Kurra and Dr. Donald Reeves, both psychiatrists, each certified:

(b) This person suffers from a mental abnormality (as defined by the Act) or personality disorder that makes the person likely to engage in acts of sexual violence if not confined to a secure facility for control, care and treatment.
(c) This person has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with sexually offense but found to be incompetent to stand trial.
Dr. Reeves added in handwriting:
Mr. [N.]'s diagnosis of Antisocial Personality Disorder predisposes him to commit acts of sexual violence as his individual manifestation of his personality disorder includes acts of sexual violence. As a result of his Antisocial Personality Disorder, Mr. [N.][ ] has serious difficulty controlling his harmful sexual behavior such that it is highly likely that he will not control his sexually violent behavior and will re-offend.
[2] T.J.N. at first declined to be interviewed by Dr. McAllister but agreed to the interview on April 5, 2004, four days before the hearing. See N.J.S.A. 30:4-27.30(b). There is no claim that Dr. McAllister is not a member of the "treatment team." See In re Civil Commitment of A.H.B., 386 N.J.Super. 16, 25-26, 898 A.2d 1027 (App.Div.), certif. denied, 188 N.J. 492, 909 A.2d 726 (2006); N.J.S.A. 30:4-27.26 (defining "treatment team"). Our reference to the fact that the statute requires the State to produce only one expert should not in any way be interpreted as suggesting the State's current practice of producing two should be changed or reduced. See N.J.S.A. 30:4-27.30.
[3] In her opinion, the trial judge "discount[ed] the view that [T.J.N.'s] attack on [a corrections officer] was sex connected," but added that conclusion did not "destroy[ ] the opinion of Dr. McAllister."
[4] Here, the judge had plea transcripts which embodied appellant's admissions. In his testimony at the commitment hearing, appellant acknowledged his crimes, including trying to penetrate, but claimed these events occurred during other criminal transactions not designed or intended for sexual purposes.