RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5002-14T2

IN THE MATTER OF THE
CIVIL COMMITMENT OF C.B.,
SVP-317-03.
__________________________

 Submitted July 5, 2017 – Decided September 27, 2017

 Before Judges Simonelli and Carroll.

 On appeal from the Superior Court of New
 Jersey, Law Division, Essex County, Docket No.
 SVP-317-03.

 Joseph E. Krakora, Public Defender, attorney
 for appellant C.B. (Patrick Madden, Assistant
 Deputy Public Defender, on the brief).

 Christopher S. Porrino, Attorney General,
 attorney for respondent State of New Jersey
 (Melissa H. Raksa, Assistant Attorney General,
 of counsel; Ragner Jaeger, Deputy Attorney
 General, on the brief).

PER CURIAM

 Appellant C.B. appeals from the June 29, 2015 Law Division

judgment, which denied his motion to remove discharge conditions

imposed under the Sexually Violent Predator Act (SVPA), N.J.S.A.

30:4-27.24 to -27.38. For the following reasons, we affirm.
 I.

 A pedophile, C.B. has a history in 1995 and 1996 of sexually

assaulting multiple girls aged four to fourteen on multiple

occasions. See In re Civil Commitment of C.B, Docket No. A-3513-

07 (App. Div. June 23, 2008) (slip op. at 4). C.B. is a self-

described alcoholic who admitted to being sexually aroused by

girls between the ages of twelve and fourteen.

 The offenses in 1995 and 1996 involved both attempted and

completed oral and vaginal penetration, and breast and other

fondling. Ibid. On March 27, 1999, C.B. pled guilty to various

charges, including aggravated sexual assault. Ibid. He received

an aggregate ten-year sentence at the Adult Diagnostic and

Treatment Center and is subject to Megan's Law community

supervision for life (CSL). Ibid.

 In 2003, after serving his sentence, C.B. was civilly

committed to the Special Treatment Unit (STU) under the SVPA.

Ibid. On June 21, 2004, the court ordered C.B.'s conditional

discharge from the STU. Id. at 5. His discharge conditions

included complying with the rules and regulations of the Division

of Parole (Parole), submitting to random urine and drug testing,

attending sex offender specific treatment and drug and alcohol

treatment, and residing at and complying with the rules of Hill's

Boarding House (Hill). Ibid. In addition, the court ordered C.B.

 2 A-5002-14T2
to submit to Global Position System (GPS) monitoring as a condition

of discharge.

 While C.B. initially complied with his discharge conditions,

he later became non-complaint. Id. at 6. By the spring of 2006,

he regularly began to miss curfew, skip appointments and the

treatment and day programs at Hill, and generally failed to abide

by the conditions of his discharge. Ibid. In August 2006, New

Hope Behavioral Health Center, one of C.B.'s treatment providers,

notified the STU case manager that C.B. had not been attending the

program for two months. Id. at 6-7.

 C.B.'s habit of skipping appointments, treatment and

programs, and missing curfew at his boarding home improved

considerably in early 2007, but dramatically worsened by mid- and

late-2007 when he became involved with a girlfriend. Id. at 7.

C.B. engaged in high-risk behavior that heightened his risk to

reoffend, and from September 2007 to October 2007, he attended

none of the programs he was required to attend under his

conditional discharge. Id. at 7-8. In August 2009, C.B. was

found after curfew in a vehicle with his girlfriend, two former

STU residents, and ten bags of marijuana.

 With the exception of a brief period between December 12,

2008, and February 17, 2009, C.B. was on conditional discharge

 3 A-5002-14T2
since 2005. On January 20, 2015, he filed a motion to remove all

of the discharge conditions.

 Judge Philip M. Freedman presided over this case since 2005,

and had extensive knowledge of C.B. and his compliance history.

The judge conducted a hearing, at which two psychological experts

testified: Rosemarie Vala Stewart, Ph.D., for the State; and

Timothy P. Foley, Ph.D., for C.B.

 Stewart testified that C.B. had substantial prior deviations

from his treatment program and a history of poor decision-making.

She diagnosed C.B. with Pedophilic Disorder, non-exclusive type,

sexually aroused to females, but not limited to incest, mild mental

retardation, intellectual deficits, and fetal alcohol syndrome.

She reviewed C.B.'s nonsexual and sexual offending history and

expressed concern about additional incidents. For example, while

on conditional discharge in 2008 and 2009, C.B. was found through

GPS monitoring to be staying overnight with his girlfriend who had

an underage child in the home; in 2009, C.B. was found in a car

past curfew and marijuana was found in the car. Stewart also

testified that in 2011, C.B.'s attendance was inconsistent for

twelve to eighteen months, and, most recently, he only attended

sex offender therapy twice a month and no longer attended substance

abuse treatment.

 4 A-5002-14T2
 Stewart observed that C.B. had too much unstructured time on

his hands and insufficient time with a professional who could

provide professional supervision. She noted that C.B.'s parole

officer and outpatient therapist were also concerned about him

having too much free time that could allow him to engage in high

risk behavior. These individuals both agreed with Stewart's

conclusion that C.B. needed more supervised structure to prevent

him from rebounding back into trouble. Stewart testified that

C.B. exercised poor judgment, and his free time enabled him to

engage in high risk behavior.

 Stewart testified that C.B.'s therapist from an outpatient

sex offender program advised her that C.B. failed to attend group

therapy steadily, and when he attended, did not use the sessions

productively, and on one occasion, seemed inebriated at group

therapy. C.B. admitted to his therapist that he had consumed a

beer, but later told Stewart that he drank the beer "accidentally"

while out with his friends who were drinking beer.

 Stewart opined that the totality of the circumstances

indicated the discharge conditions currently in place should

remain, and Parole would be unable to trace C.B.'s whereabouts

without GPS monitoring. Stewart observed that in the past, GPS

monitoring proved valuable, as it revealed C.B.'s deceptive

statements and high risk behavior.

 5 A-5002-14T2
 Stewart opined that C.B. required more accountability and

supervision than CSL could provide, and should remain under

conditional discharge. She emphasized that the additional

structure, support, and supervision the discharge conditions

provided would ensure better case coordination, maintenance of GPS

monitoring, and the opportunity for additional support and

professional contact, which seemed especially important given the

inordinate amount of free time C.B. had.

 Stewart also expressed concern over C.B.'s continued

difficulties in complying with conditions and dealing with

potential external factors, such as outside relationships, which

could lead to psychological decompensation and unpredictable

behavior. Stewart concluded that while the discharge conditions

may lessen at some point, some level of supervision was necessary

over the long term due to C.B.'s chronic emotional and intellectual

developmental difficulties.

 Foley diagnosed C.B. with Pedophilic Disorder and alcohol

abuse. He concluded, based on the combination of C.B.'s low risk

and significant compliance with conditions, that C.B. no longer

required STU monitoring. Foley focused on C.B.'s ability to

function in daily life, which in his opinion was the main

justification for attempts to commit C.B. in the first place.

Foley commented that C.B. showed the ability to attend treatment,

 6 A-5002-14T2
pay rent, and form and maintain healthy interpersonal

relationships. When asked about concerns Parole and the STU had

with C.B.'s ability to adjust to independent living, Foley opined

that continued Parole monitoring under CSL would be enough to keep

C.B. out of trouble.

 Foley admitted, however, that C.B. was recently reported as

intoxicated and missed curfew on several occasions. Nevertheless,

Foley determined that C.B. should have less structure and

supervision. Foley also testified that C.B. required supportive

counseling and sex offender specific treatment, and this could be

achieved by Parole ordering this as part of CSL.

 Foley also admitted that C.B. struggles at times because of

his limited intellectual resources, and these struggles allowed

C.B. to comply with discharge conditions only seventy-five percent

of the time. Having diagnosed C.B. with alcohol abuse, Foley

conceded that while on conditional discharge, C.B. consumed

alcohol, attended therapy while intoxicated, and missed scheduled

treatment sessions. Foley agreed with Stewart that C.B. had too

much unsupervised time on his hands. Foley also conceded that a

GPS monitoring device would help determine C.B.'s location after

curfew and whether he was in violation of the curfew requirement.

 Foley acknowledged that someone could take advantage of C.B.

due to his limited intellect. He recommended that structural

 7 A-5002-14T2
safeguards be implemented for C.B. by ordering more counseling.

In addition to sex offender treatment, Foley recommended that C.B.

engage in supportive counseling sessions because he needed someone

with whom he could develop a therapeutic relationship and who

could assist him in some judgment issues he may encounter.

Ultimately, Foley concluded that C.B. was less than highly likely

to reoffend even if the discharge conditions were removed.

 In a June 29, 2015 oral opinion, Judge Freedman found that

C.B. had involved himself in dangerous activities, including

surrounding himself with drugs and alcohol. The judge rejected

Foley's opinion that CSL was sufficient to monitor C.B. Crediting

Stewart's opinion, the judge found that CSL alone was insufficient

for C.B. because it does not offer the same protections as

conditional discharge. The judge determined that continued

supervision was necessary.

 Judge Freedman found that C.B. was highly likely to reoffend

if under CSL only. He observed that Parole officers who supervise

individuals on conditional discharge are able to devote more time

and attention to C.B. than he would receive if only under CSL and

C.B. needs that additional time and attention. He reasoned that

C.B. has "a deviant arousal . . . [h]e's been able to control with

the supervision that he has, and . . . continues to need . . .

conditional discharge supervision." He found that if only under

 8 A-5002-14T2
CSL, C.B. ran the risk of being charged with violations and sent

to jail for the same behavior he exhibited while on conditional

discharge. He also found the record supported continued GPS

monitoring. He entered an order on June 29, 2015 memorializing

his decision, and directing a discharge review occur by November

5, 2015.

 II.

 On appeal, C.B. first argues the discharge conditions should

be removed because the State failed to show by clear and convincing

evidence that he was highly likely to commit a sexually violent

offense in the foreseeable future. We disagree.

 Our scope of review of orders entered under the SVPA is

extremely limited. In re Civil Commitment of R.F., 217 N.J. 152,

179 (2014). The judges who hear SVPA cases generally are

"specialists" and "their expertise in the subject" is entitled to

"special deference." Ibid. (quoting In re Civil Commitment of

T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)). "The final

decision whether a person previously convicted of a sexually

violent offense is highly likely to sexually reoffend 'lies with

the courts, not the expertise of psychiatrists and psychologists.

Courts must balance society's interest in protection from harmful

conduct against the individual's interest in personal liberty and

autonomy.'" Ibid. (citation omitted). Our task is to determine

 9 A-5002-14T2
"whether the findings made by the trial judge were clearly

erroneous." In re Civil Commitment of W.X.C., 407 N.J. Super.

619, 630 (App. Div. 2009) (citation omitted), cert. denied, 562

U.S. 1297, 131 S. Ct. 1702, 179 L. Ed. 2d 635 (2011).

 We give "the 'utmost deference' to the commitment judge's

determination of the appropriate balancing of societal interests

and individual liberty." In re Civil Commitment of R.Z.B., 392

N.J. Super. 22, 36 (App. Div. 2007) (quoting In re Commitment of

J.P., 339 N.J. Super. 443, 459 (App. Div. 2001)), certif. denied,

192 N.J. 296 (2007). In doing so, the ultimate determination of

whether an offender will re-offend "is reserved to the sound

discretion of the trial court." In re Registrant G.B., 147 N.J.

62, 79 (1996).

 The SVPA authorizes the trial court to conditionally release

individuals from the STU if, among other things, "the court finds

that the person will not be likely to engage in acts of sexual

violence because the person is amenable to and highly likely to

comply with a plan to facilitate the person's adjustment and

reintegration into the community." N.J.S.A. 30:4-27.32(c)(1).

Conditional discharge is reserved for individuals who are highly

likely to comply and avoid engaging in acts of sexual violence

through a transition plan designed to "facilitate the person's

adjustment and reintegration into the community so as to render

 10 A-5002-14T2
involuntary commitment as a sexually violent predator unnecessary

for that person." Ibid. "Conditions imposed on the person shall

be specific and shall be for the purpose of ensuring that the

person participates in necessary treatment and that the person

does not represent a risk to public safety." N.J.S.A. 30:4-

27.32(c)(2).

 To allow a person who has been committed as a sexually violent

predator to be released without conditions "may, in certain

circumstances, place the safety and security of the public at

risk. This risk of harm to society may be reduced by the person's

mandatory compliance with conditions upon release." In re Civil

Commitment of E.D., 353 N.J. Super. 450, 456-57 (App. Div. 2002).

When imposing conditions, the trial court should consider

conditions "that would substantially reduce the likelihood of

future acts of sexual violence." IMO the Commitment of J.J.F.,

365 N.J. Super. 486, 501 (App. Div.), certif. denied, 179 N.J.

373 (2004). To continue discharge conditions, the State must

show the conditions are required so the person: (1) "participates

in necessary treatment;" and (2) "does not represent a risk to

public safety." N.J.S.A. 30:4-27.32(c)(2).

 We have considered C.B.'s argument in the light of the record

and applicable legal principles and conclude it is without

sufficient merit to warrant discussion in a written opinion. R.

 11 A-5002-14T2
2:11-3(e)(1)(E). We affirm substantially for the reasons Judge

Freedman expressed in his oral opinion. We are satisfied the

record amply supports the judge's findings that C.B. is highly

likely to reoffend if under CSL only, and continuation of

conditional discharge is necessary to assure C.B. participates in

treatment and does not represent a risk to public safety.

 III.

 C.B. next argues that the court's retroactive application of

the Sex Offender Monitoring Act (SOMA), N.J.S.A. 30:4-

123.91(a)(2)(a), to impose the GPS monitoring condition violated

State and federal constitutional proscription against ex post

facto laws. This contention lacks merits.

 The court imposed the GPS monitoring condition under the

SVPA, specifically N.J.S.A. 30:4-27.32(c)(2), not SOMA. Thus,

C.B.'s reliance on SOMA and Riley v. N.J. State Parole Bd., 219

N.J. 270 (2014) (finding SOMA violated State and federal

prohibitions against ex post facto laws) is misplaced.

 In addition, our Supreme Court has rejected ex post facto

challenges to the SVPA. See In the Matter of the Civil Commitment

of J.M.B., 197 N.J. 563, 600-01, cert. denied, 558 U.S. 999, 103

S. Ct. 509, 175 L. Ed. 2d 361 (2009). The Court also rejected a

challenge based on the argument that the SVPA unconstitutionally

imposes additional punishment on sex offenders. State v. Bellamy,

 12 A-5002-14T2
178 N.J. 127, 138 (2003). In each case, the Court emphasized that

the SVPA is not a penal statute. J.M.B., supra, 197 N.J. at 599;

Bellamy, supra, 178 N.J. at 138; see also In the Matter of the

Civil Commitment of W.X.C., 204 N.J. 179, 188 (2010) (reaffirming

that the SVPA is a civil, not a penal statute), cert. denied, 562

U.S. 1297, 131 S. Ct. 1702, 179 L. Ed. 2d 635 (2011).

 Further, Riley is distinguishable. Riley was subject to

lifetime GPS monitoring under SOMA. 219 N.J. at 294. C.B. is not

subject to lifetime GPS monitoring under the SVPA. The SVPA

requires periodic review of C.B.'s conditional discharge status

and discharge conditions, including GPS monitoring. See N.J.S.A.

30:4-27.32(c)(2) (providing that "[i]f the court imposes

conditions for a period exceeding six months, the court shall

provide for a review hearing on a date the court deems appropriate

but in no event later than six months from the date of the order").

Accordingly, there must be a review hearing, at which time the

court will determine whether to continue the conditional discharge

or remove discharge conditions.

 Affirmed.

 13 A-5002-14T2