# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5145-14T2

IN THE MATTER OF THE
CIVIL COMMITMENT OF A.D.
SVP-719-15.

_____

Submitted April 4, 2017 — Decided October 27, 2017

Before Judges Espinosa and Suter.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Docket No. SVP-
719-15.

Joseph E. Krakora, Public Defender, attorney
for appellant (Thomas G. Hand, Designated
Counsel, on the brief).

Christopher S. Porrino, Attorney General,
attorney for respondent (Melissa H. Raksa,
Assistant Attorney General, of counsel;
T. Nicole Williams-Park, Deputy Attorney
General, on the brief).

PER CURIAM

A.D. appeals from a judgment that ordered his civil commitment
pursuant to the Sexually Violent Predator Act (SVPA), N.J.S.A.
30:4-27.24 to -27.38.  We affirm.

In May 2005, A.D. entered guilty pleas to two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a), and one count of second-degree criminal attempt to commit aggravated sexual assault, N.J.S.A. 2C:14-2(a). These convictions arose from the rapes of two teenage girls and the attempted assault on another teenage girl, all occurring within a ten-week period in 2002.

In providing a factual basis for his guilty pleas, A.D. admitted to the following. On May 8, 2002, he grabbed J.K. from behind as she was walking on the street and dragged her into an alley where he forced her to submit to an act of vaginal penetration. On June 10, 2002, he encountered S.W. on the street, dragged her a substantial distance away and committed an act of sexual penetration upon her against her will. On July 16, 2002, he accosted E.K., grabbed her and dragged her a substantial distance away, where he attempted to commit an act of vaginal penetration.

After his guilty pleas, A.D. was referred to the Adult Diagnostic and Treatment Center (ADTC) for psychological examination and a "determination of whether [his] conduct was characterized by a pattern of repetitive, compulsive behavior and, if it was, a further determination of the offender's amenability to sex offender treatment and willingness to participate in such treatment." N.J.S.A. 2C:47-1. The examining psychologist, Dr.

Mark Frank, reported that A.D. accepted responsibility for the two rapes but denied using a gun, as alleged by the victim of the first rape, and, despite his guilty plea, denied responsibility for the attempted aggravated sexual assault. A.D. explained the prosecutor threatened to withdraw the plea offer unless he entered guilty pleas to all three offenses. The ADTC report states A.D. "described himself as an alcoholic" and found "it difficult to control his sex drive when he drinks." He stated the rapes occurred when "he forced the women to submit to previously agreed upon sexual relations after they changed their minds and no longer wished to proceed."

A.D. believed he had "an inordinately strong sexual drive." Dr. Frank reported:

> From [A.D.'s] description, he experiences heightened sexual arousal under circumstances in which he is exerting dominance and control over his partners. He would find it highly arousing to cheat and manipulate prostitutes. At times, he would pay them for sex and then rob them of the money he gave them after the sex act was completed. On other occasions, he[] drove prostitutes to remote locations and forced them to have sex with him without payment or risk being kicked out of his vehicle and abandoned far from home.
>
> [A.D.] described similar feelings of arousal connected to the coercive elements of his behavior in the instant offenses. "You do feel powerful," he said. "It makes you feel dominant. I might have these thoughts when I was sober, like forcing people to do things.

A-5145-14T2

But once I get intoxicated, it takes over and makes you go ahead and do them." Although he reportedly felt guilty following the incident with J.K. and promised himself he would never do anything like that again, he subsequently engaged in similar behavior with S.W.

A.D. told Dr. Frank he believed he was likely to similarly reoffend in the future if he did not have successful psychotherapy. Dr. Frank found the requisite elements of repetitive and compulsive behavior for A.D. to be sentenced under the New Jersey Sex Offender Act, and concluded, "Although the prognosis is guarded, [A.D.] is potentially amenable to treatment and he said he would be willing to participate fully" in the ADTC program.

A.D. was sentenced in 2005 to concurrent fifteen-year terms subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, to be served at the ADTC, community supervision for life, a five-year term of parole supervision, Megan's Law requirements, N.J.S.A. 2C:7-2, and appropriate fines and penalties.

At the time he was discharged from the ADTC, A.D.'s last therapist opined that his participation in treatment had been variable. The therapist reported A.D. "was described as having limited motivation and not being invested in treatment" and that he "has not addressed the 'adrenaline rush' he felt when he raped." A.D.'s score on the Static-99R, which is used to estimate risk for sexual reoffending, suggested he is Low-Moderate Risk.

In April 2015, the State filed a petition to have A.D. civilly committed under the SVPA.

The SVPA provides for the involuntary civil commitment of "a person who has been convicted . . . of a sexually violent offense" who "suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." N.J.S.A. 30:4-27.26.

"SVPA commitment is limited to those who are highly likely to sexually reoffend." In re Civil Commitment of R.F., 217 N.J. 152, 173 (2014). To satisfy the statutory requirements, the State must prove three elements by clear and convincing evidence. Ibid.; N.J.S.A. 30:4-27.32(a). First, the State must prove the individual has been convicted of a sexually violent offense. N.J.S.A. 30:4-27.26. The statutory definition of a "sexually violent offense," includes aggravated sexual assault and an attempt to commit an aggravated sexual assault, N.J.S.A. 30:4-27.26(a). The second required element is that the individual suffers from a mental abnormality or personality disorder. N.J.S.A. 30:4-27.26. Finally, the State must prove that, as a result of his psychiatric abnormality or disorder, "it is highly likely that the individual will not control his or her sexually violent behavior and will

reoffend." R.F., supra, 217 N.J. at 173 (quoting In re Commitment of W.Z., 173 N.J. 109, 130 (2002)).

At the hearing conducted on the State's petition, the State presented the testimony of a psychiatrist, Dr. Roger Harris, and a psychologist, Dr. Christine Zavalis. A.D. presented testimony from a psychologist, Dr. Gianni Pirelli. All three experts diagnosed A.D. with paraphilic disorder, non-consent.

Dr. Harris stated his diagnosis of "other specified paraphilic disorder for coercion" was appropriate based on A.D.'s "self-report to multiple clinicians" that he used sex as a coping mechanism, "got pleasure from exerting his dominance and control over others," "was aroused to cheat and manipulate, . . . felt like a man finally when he could not feel like a man in any other aspect of his life, . . . [and] felt strong and powerful." Although A.D. was living with a woman and had children with her, "consensual sex was really inadequate for him to sustain and feel like a powerful, important person, . . . he needed the other arousal pattern to feel like a man and to sustain himself." This was manifested by his gratifying himself in the offenses he admitted and in his manipulation and cheating of prostitutes. Dr. Harris also diagnosed an antisocial personality disorder based upon A.D.'s "clear pattern of a pervasive disregard and . . . violation for [sic] the rights of others." Dr. Harris opined that

these conditions predisposed A.D. to sexual violence and that he would have serious difficulty in controlling his sexual offending behavior. Dr. Harris did not believe that A.D.'s Static-99 score accurately reflected the actual risk posed by him because his risk to sexually reoffend was increased by his paraphilia, antisocial attitudes and behaviors, poor cognitive problem solving and poor self-regulation. Dr. Harris concluded that A.D. met the criteria for civil commitment under the SVPA and "would be highly likely to sexually reoffend if placed in a less restrictive setting."

Dr. Zavalis found it significant that A.D. committed "three offenses over an approximately two-month period, which . . . suggest[ed] that it was something that was gratifying to him that he wanted to repeat, and that he didn't wait that long to do that." She also found the discrepancies between the versions of events given by A.D. and his victims significant as indicating he did not take full responsibility for his behavior. However, Dr. Zavalis also cited the behavior as described by A.D. — raping the two teenagers in retribution after they reneged on their offers of sex for drugs and his behavior involving prostitutes — as risk factors in his sexual offending history.

Dr. Zavalis found A.D. was "a really poor historian and not particularly credible." A.D. admitted lying in the past to get a certain outcome, such as malingering psychiatric symptoms in order

to be sent to a hospital and placed on medication to reduce his prison sentence and also lying about his offending history related to his behavior towards prostitutes in order to be sent to ADTC as opposed to a regular prison. However, he also lied "across a number of domains . . . [e]ven in things that really wouldn't be significant and that there wouldn't be a personal motive or a benefit to him to lie about."

Dr. Zavalis concurred that the Static-99R score underestimated A.D.'s risk to reoffend because it did not take into account factors such as his antisocial personality traits, his deviant arousal, poor coping skills, hostility toward women, history of: poor judgment, substance abuse, negative emotionality and aggression, sexual preoccupation and hypersexuality.

Dr. Zavalis stated A.D.'s response to treatment at the ADTC was poor and that, although he realized the role alcohol played in his life, he had attended Alcoholics Anonymous for only a few months in 2013.

Dr. Zavalis concluded that A.D. suffers from a mental abnormality or personality disorder that would predispose him to sexually reoffend, based upon her diagnoses of Other Specified Paraphilia Disorder (non-consent with sadistic features), Other Specified Personality Disorder (with antisocial features), Alcohol Use Disorder (severe) (in a controlled environment) and Cannabis

8

Use Disorder (mild) (in sustained remission).  She believed these conditions would predispose him to sexual violence and that he would have serious difficulty controlling his sexual offending behavior if released and not committed for treatment.  She recounted a number of factors she considered in her risk assessment and concluded A.D. was "highly likely" to reoffend if not committed.

Dr. Pirelli administered a Personality Assessment Inventory to A.D. which, he concluded, produced invalid results because A.D. "rush[ed] through the testing" and "did not appear to be attending well to the items."  A.D.'s results on the Minnesota Multiphasic Personality Inventory — 2 Restructured Form (MMPI-2-RF), a self-report measure, reflected elevations on the Antisocial Behavior and Substance Abuse scales.  Dr. Pirelli noted that on the Risk for Sexual Violence Protocol (RSVP), A.D. showed a number of risk factors that were particularly relevant: "the use of psychological and physical coercion in his commission of sexual violence; his previously endorsed attitudes that supported/condoned sexual violence; problems with stress/coping; and problems resulting from child abuse."

Dr. Pirelli stated,

> Of note is that it is unclear if [A.D.] is exhibit[ing] minimization and/or denial about his sexual offense history; namely, he reports

that he did not use a gun during the commission of one of his sexual assaults and he denies committing the third sexual offense. He has maintained this position for at least 10 years, across evaluators, but such is in contrast to police and court records.

Dr. Pirelli noted that A.D.'s sexual deviance and substance abuse related to his psychological functioning.

Dr. Pirelli also identified "protective factors." There was no evidence of "diversity or escalation in his sexual violence" but, because A.D. was apprehended within a narrow time frame, it was unclear if the offenses were "suggestive of chronicity of violence." He also noted A.D. no longer condoned sexual violence, had gained some insight, developed coping mechanisms through sex offender specific treatment and was amenable to further treatment. In addition, A.D. did not present with severe mental illness or violent ideation.

Turning to the criteria for classification as a sexually violent predator, Dr. Pirelli concluded A.D. met the criteria for Other Specified Paraphilic Disorder, which predisposed him to commit acts of sexual violence. He opined, however, that his experience of such symptoms had dissipated over the years. Although A.D.'s "mental health conditions would significantly impair his volitional capacity should he be actively experiencing them," Dr. Pirelli found those conditions were not impacting his

volitional capacity because he had not been under the influence of alcohol since his arrest and "his Paraphilic Disorder has been largely controlled for some time." Dr. Pirelli concluded that A.D. "warrants continued, mandated intensive interventions to manage his risk of sexually re-offending." Although A.D. posed "a significant risk" if released to the community "in the absence of a highly structured discharge plan," Dr. Pirelli opined that his treatment needs could be met in the community.

The trial court found all three elements necessary for commitment under the SVPA were proven by clear and convincing evidence. The court reviewed in depth the evidence and made specific findings regarding the relative credibility of the experts. The court acknowledged that A.D. had experienced some benefit from treatment but that the benefit was insufficient to make it "less than highly likely" he would reoffend if released on conditional discharge. Accordingly, the trial court entered an order committing A.D. to the Special Treatment Unit, with such commitment to be reviewed in one year.

A.D.'s guilty pleas more than amply prove he was convicted of sexually violent offenses. In his appeal, A.D. challenges the trial court's conclusion that the remaining two elements were met, presenting the following arguments for our consideration:

POINT I

THE TRIAL COURT IGNORED ESTABLISHED
CASE LAW AND DUE PROCESS PROTECTIONS
WHEN IT ADMITTED INTO EVIDENCE
INADMISSIBLE HEARSAY TESTIMONY,
PRESENTED UNDER THE GUISE THAT THIS
HEARSAY WAS NECESSARY TO SUPPORT THE
TESTIMONY OF THE STATE'S EXPERTS,
AND THEN BASED ITS OWN FINDINGS AND
CONCLUSIONS ON THAT INADMISSIBLE
HEARSAY.

POINT II

THE TRIAL COURT ERRED IN FINDING
A.D. WAS PRESENTLY HIGHY LIKELY TO
COMMIT A SEXUAL OFFENSE BECAUSE THE
TESTIMONY PRESENTED DID NOT PROVIDE
A BASIS FOR A FINDING OF A PRESENT
RISK TO SEXUALLY REOFFEND.

Our review of the trial court's "commitment determination is extremely narrow."  In re D.C., 146 N.J. 31, 58 (1996).  This is so, in part, because "[t]he judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'"  R.F., supra, 217 N.J. at 174 (quoting In re Civil Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)).  We "should not modify a trial court's determination either to commit or release an individual unless 'the record reveals a clear mistake,'" R.F., supra, 217 N.J. at 175 (quoting D.C., supra, 146 N.J. at 58), provided "the trial court's findings are supported by 'sufficient credible evidence present in the record.'"  Ibid.

12

There is sufficient credible evidence in the record to support the trial court's findings. A.D. admitted to the forcible rapes of two teenage girls. Although he later denied committing the third offense, he provided an adequate factual basis for the attempted aggravated sexual assault and so, the record supports a finding that he committed three sexually violent offenses within a short period of time.

All three experts concluded he suffered from a personality disorder that predisposed him to sexual violence and affected his ability to control such behavior. Indeed, A.D. admitted to being sexually aroused by raping women, that it gave him an "adrenaline rush."

Both Dr. Harris and Dr. Zavalis opined that A.D. was highly likely to reoffend if released and supported their conclusions with facts from the record, which were largely dependent upon A.D.'s own admissions. Although A.D. derived some benefit from treatment, he also manifested a lack of responsiveness to treatment. Most notably, despite his contention that his sexual violence was linked to his alcoholism, A.D. failed to show a commitment to recovery.

Dr. Pirelli acknowledged A.D. posed a significant risk of sexually re-offending and required "continued, mandated intensive interventions to manage his risk of sexually re-offending." The

13                                                              A-5145-14T2

trial court was not required to accept his conclusion that A.D.'s treatment needs could be adequately addressed in the community. See D.C., supra, 146 N.J. at 61. In concluding A.D.'s mental conditions did not impact his capacity to refrain from sexual violence, Dr. Pirelli relied upon the fact that A.D. had not been under the influence of alcohol since his arrest and that his Paraphilic Disorder had "been largely controlled for some time." The probative force of this opinion is substantially undercut by the fact that A.D. has been incarcerated since his arrest and therefore unable to get under the influence of alcohol or act on his Paraphilic Disorder. The trial court's determinations to give greater weight to the expert opinions of Dr. Harris and Dr. Zavalis and to reject Dr. Pirelli's opinion have reasonable support in the record.

There is more than adequate evidence to support the trial court's findings.

A.D. argues, nonetheless, that his commitment must be reversed because the State's experts and the trial court relied upon hearsay evidence to accept facts relating to the offenses that he denied, namely, that he used a gun and that he committed the attempted aggravated sexual assault. This argument merits only limited discussion.

First, even if the facts of the underlying offenses are filtered by A.D.'s subsequent denials, he admitted to two forcible rapes. In providing a factual basis for his guilty plea, he testified that he committed the attempted aggravated sexual assault. Whether he used a gun in committing any of these acts is not essential to any finding that he committed sexually violent offenses and has little, if any, bearing as to the other elements the State was required to prove.

The State's experts relied heavily upon A.D.'s own admissions to support their conclusions. Although they reviewed his denials regarding a weapon and the third offense, their discussion of the facts denied by A.D. was mainly related to an assessment of his credibility. Their credibility evaluation was not dependent upon facts he denied. As Dr. Zavalis observed, A.D. made a number of other statements that undermined his credibility, including his admission he had lied on other matters because he believed it would secure an advantage for him. Even Dr. Pirelli commented that A.D.'s denials, which were contradicted by police reports and court records, might be a function of A.D.'s minimization and denial about his sexual offense history. The opinions of the State's experts were not compromised in any way by the references to the allegations that A.D. used a weapon or his admitted guilt on the third offense.

A.D. also argues the trial court erred in finding he used a gun in one of the rapes and threatened the use of a gun in the attempt. We agree that the trial court should not have made findings of fact that were not admitted by A.D. based upon hearsay evidence. See In re Civil Commitment of A.E.F., 377 N.J. Super. 473, 490 (App. Div.), certif. denied, 185 N.J. 393 (2005). However, as we have noted, whether A.D. used a gun was not germane to proof of any of the elements the State was required to prove. There was more than adequate evidence to support the trial court's conclusion that commitment was appropriate here.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION