# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3814-17T5

IN THE MATTER OF THE
CIVIL COMMITMENT OF
J.A., SVP-528-09.

_____

Argued April 30, 2019 – Decided June 13, 2019

Before Judges Hoffman, Geiger and Enright.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-528.09.

Susan Remis Silver, Assistant Deputy Public Defender, argued the cause for appellant J.A. (Joseph E. Krakora, Public Defender, attorney; Susan Remis Silver, on the briefs).

Stephen J. Slocum, Deputy Attorney General, argued the cause for respondent State of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Stephen J. Slocum, on the brief).

PER CURIAM

Appellant J.A., who is now fifty-four years old, appeals from a March 19, 2018 judgment continuing his involuntary commitment to the Special Treatment

Unit (STU) as a sexually violent predator pursuant to the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. We affirm.

Appellant's criminal record, including the predicate offense that led to his initial confinement at the STU and his prior SVPA proceedings, are described in our prior opinion continuing his involuntary commitment to the STU and need not be repeated in full here. In re Civil Commitment of J.A., No. A-5294-13 (App. Div. Mar. 24, 2017). We discern the following pertinent facts from the record. Appellant was first committed to the STU in May 2009. Appellant was conditionally discharged from the STU on October 27, 2010, to reside at America's Keswick in Whiting and undergo an alcohol treatment program. He was prohibited from unsupervised contact with children under the age of eighteen, except for his son.

The conditional discharge was vacated on January 4, 2011, and appellant was recommitted to the STU. Subsequently, appellant was conditionally discharged from the STU under similar conditions as previously ordered. Following several periodic reviews of his conditional discharge, appellant was permitted in April 2012 to reside in any residence approved by the Division of Parole. The conditional discharge was once again vacated on June 12, 2012, and appellant was recommitted to the STU after he cut the GPS device off his

ankle and traveled to Atlantic City. Appellant's commitment to the STU was continued by judgments dated January 11, 2013 and June 5, 2014. We affirmed the June 2014 judgment continuing his commitment to the STU. Ibid.

Appellant's next review hearing took place over several days in March 2018. The State presented the testimony of Dr. Roger Harris, who was admitted without objection as an expert in psychiatry. The State also presented the testimony of Dr. Justyna Dmowski, a psychologist and member of the Treatment Progress Review Committee (TPRC) at the STU; she was admitted as an expert in psychology without objection. Appellant presented no witnesses.

Appellant was most recently reviewed by the TPRC in November 2017. As part of that process he was interviewed by Dr. Dmowski, who also prepared the annual TPRC review report for appellant dated November 27, 2017. The report was admitted into evidence without objection.

Dr. Dmowski rendered her opinions based on her interview of appellant and his STU chart, treatment progress notes, treatment plan, multi-disciplinary treatment team reports, and discovery, comprised of past reports, judgments of convictions, and "any other legal paperwork." She testified those sources of information were the type psychologists use when performing such evaluations. The STU chart was admitted into evidence without objection.

A-3814-17T5

Dr. Dmowski testified appellant is currently in Phase 2 of treatment, known as the "rapport building phase." Phase 2 precedes Phase 3, which is "the core phase of treatment." With regard to treatment progress, Dr. Dmowski testified appellant was doing fairly well in treatment in early 2017. Appellant's behavior deteriorated thereafter. Dr. Dmowski described his behavior as rigid, defensive, and angry. In May 2017, he got into a physical altercation with another resident, and was placed on Modified Activities Program (MAP)[1] for six months. Appellant did not attend any substance abuse groups while on MAP even though such groups were available to him. Dr. Dmowski stated appellant was not elevated to Phase 3 because he "continues to struggle with his behavior." This was the second time he had been placed on MAP due to an altercation; the first occurred in 2013. Appellant was on treatment refusal status for two years from 2014 to 2016.

Dr. Dmowski diagnosed appellant with severe alcohol use disorder and stated he exhibits impulse control problems. Appellant's abuse of alcohol lowers

---

[1] The MAP, "a component of the clinical treatment program at the STU that focuses on stabilizing disruptive or dangerous behaviors," is a behavior-related treatment modality. M.X.L. v. N.J. Dep't of Human Servs./N.J. Dep't of Corr., 379 N.J. Super. 37, 45 (App. Div. 2005).

A-3814-17T5

his inhibitions and relates to his history of physical aggression. Appellant also abused opiates, crack cocaine, and marijuana.

Dr. Dmowski characterized appellant's knowledge or command of treatment issues as very elementary. Appellant does not describe himself as a sex offender, instead referring to himself as an egomaniac. "He said he enjoys coercion and it's arousing . . . ." Appellant also described himself as a "sex addict" who is "programmed to have sex with a woman . . . [five] minutes after meeting her." Appellant also found it arousing when a woman was in distress.

Dr. Dmowski diagnosed appellant with other paraphilic disorder (non-consent); antisocial personality disorder; alcohol use disorder, severe, in controlled remission; bipolar I disorder, by history; and substance abuse/medication-induced bipolar and related disorder (provisional). Several actuarial instruments were utilized. Appellant's Psychopathy Checklist-Revised, 2nd edition (PCL-R)[2] score was 30, which falls below "the diagnostic

---

[2] "The PCL-R test is a widely used method to measure psychopathic personality traits." Trantino v. N.J. State Parole Bd., 166 N.J. 113, 206 (2001) (Baime, J., dissenting). A score of thirty is the cutoff for reliable classification as a psychopath. Ibid.

threshold for the construct of psychopathy."  His Static-99R[3] score was 7, placing him in Risk level IVB or well above average risk for sexual recidivism. Appellant scored a 16 on the STABLE-2007,[4] which falls in the interpretive range of a high level of dynamic needs.

Dr. Dmowski described other paraphilic disorder (non-consent) as a "chronic condition that is characterized by intense, sexually arousing fantasies, sexual urges, and/or behaviors involving sexual arousal to engaging in sexual acts with individuals who are unable or unwilling to consent."  Dr. Dmowski described antisocial personality disorder as:

> an enduring pattern of inner experience and behavior that deviates markedly from an individual's cultural expectations, that is pervasive, inflexible, and stable over time, and that leads to significant distress or impairment in functioning.  The core feature of antisocial personality disorder is a pattern of disregard for, and violation of, the rights of others.

---

[3]  "The Static-99 is an actuarial test used to estimate the probability of sexually violent recidivism in adult males previously convicted of sexually violent offenses."  In re Commitment of R.F., 217 N.J. 152, 164 n.9 (2014) (citing Andrew Harris et al., Static-99 Coding Rules Revised-2003 5 (2003)).  The Static-99R is the revised version of the test.

[4]  The Stable-2007 is an actuarial instrument used to assess dynamic risk factors that can change over time.  Kevin Baldwin, Sex Offender Risk Assessment, Assessment and Planning Initiative 2-3 (July 2015), https://www.smart.gov/pdfs/SexOffenderRiskAssessment.pdf.

A-3814-17T5

Dr. Dmowski stated appellant "displays impulsivity, poor decision making abilities, difficulty planning, low frustration tolerance, lack of remorse, deceitful and conning behavior for pleasure, and failure to conform to social norms with respect to behaviors, as indicated by repeatedly performing acts that are grounds for arrest."

Dr. Dmowski opined that appellant's diagnoses affect him emotionally, cognitively, or volitionally so as to predispose him to commit acts of sexual violence. She characterized appellant's risk of sexually re-offending in the foreseeable future as "high." In reaching that conclusion, Dr. Dmowski considered appellant's Static-99R score, and his stable and dynamic factors, which are his capacity for relationship stability, hostility towards women, his impulsivity, poor problem solving skills, his sex drive preoccupation, and struggles with cooperation with supervision.

As to treatment recommendations, Dr. Dmowski stated it is important that appellant not get on MAP again, and that he control his emotions, find alternatives to assault, understand his dynamics, work on relapse prevention, understand and begin working on his interventions, finish his autobiography, and start working on his sexual history questionnaire. Additionally, Dr.

Dmowski found appellant used sex as a coping mechanism, and displayed negative emotionality and lack of concern for others.

Dr. Harris testified he interviewed appellant and reviewed his clinical certificates, presentence investigation reports, prior forensic evaluations, TPRC reports, multi-disciplinary treatment team reports, Comprehensive Treatment Plan Review (CTPR), and progress notes. He stated such sources of information are the types of information used in performing psychiatric evaluations.

Dr. Harris opined that appellant is an alcoholic who has a significant problem regulating himself with substances as well as sexually. He diagnosed appellant as suffering from an alcohol use disorder. He stated appellant does not have the necessary internal controls to regulate his sexual and nonsexual aggression. When appellant uses alcohol it "further compromise[s] his ability to control himself to not sexually gratify himself at the expense of another person."

Dr. Harris discussed appellant's view that he has no problem other than alcohol and "does not approach treatment." Dr. Harris described appellant's current treatment stance as he is a Christian who essentially does not need treatment and can regulate himself. Dr. Harris concluded appellant is "not learning the things he needs to learn to better self-regulate himself."

8 <span>A-3814-17T5</span>

Dr. Harris diagnosed appellant as suffering from antisocial personality disorder, alcohol use disorder in a controlled setting, and rule out paraphilic disorder (non-consent). Dr. Harris believed it was likely appellant has an arousal to coercion. He opined appellant suffers from a mental abnormality or personality disorder that affects him either emotionally, cognitively, or volitionally so as to predispose him to commit acts of sexual violence. He further opined appellant would be highly likely to sexually reoffend in the foreseeable future unless confined in a secure facility for treatment. In reaching those conclusions, Dr. Harris considered appellant's Static-99 score, which placed him well above average to reoffend; his antisocial attitudes and behavior; poor self-regulation; poor problem solving; use of sex for coping; poor supervision; failed community release; and demonstrated recklessness and impulsivity.

Based on the expert proofs, Judge Mulvihill found by clear and convincing evidence that appellant required continued commitment to the STU. He determined both State witnesses were very credible. The judge also found the sources of information used by the experts were of the type utilized by experts in their respective fields. In assessing and weighing the evidence provided by the State's experts, the judge concluded that clear and convincing evidence

9

established appellant suffers from other specified paraphilic disorder (non-consent) and antisocial personality disorder, which do not spontaneously remit. The judge found these disorders collectively increase appellant's risk of re-offending by "affect[ing] him emotionally, cognitively, [and] volitionally, causing him to have serious difficulty controlling sexually violent behavior," rendering him "predisposed to sexual violence," and "highly likely to sexually re-offend."

The judge considered a conditional discharge plan, but concluded – based on appellant's history – he was "not highly likely to adhere to the conditions of conditional discharge." The judge noted appellant was involved in two physical altercations at the STU and continues to deny he is a sex offender, contending his only problem is alcohol. Accordingly, Judge Mulvihill entered a judgment continuing appellant's commitment to the STU.

This appeal followed. Appellant argues: (1) the continued commitment was based on inaccurate information regarding his criminal record; (2) the trial court's decision was based on inadmissible and unreliable hearsay; (3) the State did not meet its burden of proving he was highly likely to sexually reoffend; and (4) the State's experts rendered inadmissible net opinions that lacked an empirical basis.

Our scope of review of judgments in SVPA commitment cases is "extremely narrow."  In re Commitment of R.F., 217 N.J. 152, 174 (2014) (quoting In re D.C., 146 N.J. 31, 58 (1996)).  "The judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'"  Ibid. (quoting In re Civil Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)).  "We give deference to the findings of our trial judges because they have the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'"  Ibid. (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).  "Accordingly, an appellate court should not modify a trial court's determination either to commit or release an individual unless 'the record reveals a clear mistake.'"  Id. at 175 (quoting D.C., 146 N.J. at 58).  "So long as the trial court's findings are supported by 'sufficient credible evidence present in the record,' those findings should not be disturbed."  Ibid. (quoting Johnson, 42 N.J. at 162).

After reviewing the record in light of the contentions raised on appeal, we affirm substantially for the reasons stated by Judge James F. Mulvihill in his comprehensive oral decision.  We add only the following.

SVPA committees are afforded annual review hearings to determine the need for continued involuntary commitment.  N.J.S.A. 30:4-27.35.  If "the legal

standard for commitment no longer exists," then "the committee is subject to release." In re Civil Commitment of E.D., 353 N.J. Super. 450, 455 (App. Div. 2002); see also In re Commitment of W.Z., 173 N.J. 109, 132-33 (2002). Thus, an order of continued commitment under the SVPA, like an initial order, must be based upon "clear and convincing evidence that the individual has serious difficulty controlling his or her harmful sexual behavior such that it is highly likely that the person will not control his or her sexually violent behavior and will reoffend." W.Z., 173 N.J. at 133-34. The court must address the committee's "present serious difficulty with control over dangerous sexual behavior" because the "annual court review hearings on the need for continued involuntary commitment" require assessment of "fresh information concerning the committee's dangerousness." Id. at 132-33.

Appellant has previously been determined to be a "sexually violent predator" as defined by N.J.S.A. 30:4-27.26, based upon his conviction for a predicate offense as defined by the SVPA. Appellant pleaded guilty to fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b), the predicate offense that led to his initial confinement in the STU, in 2008. J.A., slip op. at 5. Appellant then successfully applied for post-conviction relief in 2010 and his conviction

was vacated. Id. at 5 n.2. He subsequently entered a new plea to criminal trespass, which is not a predicate offense under the SVPA. Ibid.

Although the exact nature of appellant's 1984 convictions was "unclear" when appellant was last before this court, we determined "appellant was at least convicted of sexual contact in 1984, thereby placing him under the purview of the SVPA."[5] Id. at 17-18 (citing N.J.S.A. 30:4-27.26(a)). See also State v. Bellamy, 178 N.J. 127, 140 (2003) (noting a conviction for "fourth-degree sexual contact" constitutes a predicate offense under the SVPA). In this appeal, appellant has provided the court with his original 1984 indictments and 1985 judgments of convictions. As a result, we now know appellant pleaded guilty to one count of second-degree sexual assault in connection with Indictment No. 30-1-84; plus, one count of fourth-degree sexual contact and one count of fourth-degree unlawful possession of a weapon in connection with Indictment No. 0395-5-84. Thus, it is beyond dispute appellant was convicted of a predicate

---

[5] The State's petition stated appellant pled guilty to sexual assault, and appellant's brief made contradictory statements. J.A., slip op. at 17-18. Appellant's statement of facts suggested the record was unclear as to whether he was actually convicted of "sexual contact" in 1984. Id. at 18. Appellant's legal argument section, however, acknowledged his sexual contact conviction and instead asserted "its 'remoteness' should have precluded the court from using it as the predicate offense." Ibid. The prior SVPA judge "determined appellant was convicted of two counts of 'sexual contact.'" Id. at 17.

offense as defined by the SVPA.[6] The State is not required to re-prove the issue of whether or not appellant committed an SVPA predicate offense at each review hearing, whose purpose is to determine whether continued confinement and treatment is required. We decline defendant's invitation to re-litigate this settled issue further and once again decline to reverse on this basis. See J.A., slip op. at 19 (employing an identical analysis).

The judge's decision, when compared to the record on appeal, commands the special deference afforded to specialist judges who hear SVPA cases. We are satisfied the trial court's judgment for continued commitment is both adequately supported by sufficient credible evidence in the record and consistent with controlling legal principles. There is no basis for reversal on this record.

Appellant's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[6] We reach this conclusion without even considering appellant's convictions in the State of Washington, which he now argues on appeal were for assault, not "indecent liberties."

A-3814-17T5