# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2075-16T5

IN THE MATTER OF CIVIL
COMMITMENT OF J.F.,
SVP 214-01.

_____

Argued October 11, 2018 – Decided May 17, 2019

Before Judges Nugent, Reisner and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-214-01.

Susan Remis Silver, Assistant Deputy Public Defender, argued the cause for appellant J.F. (Joseph E. Krakora, Public Defender, attorney; Susan Remis Silver, of counsel and on the briefs).

Nicholas Logothetis, Deputy Attorney General, argued the cause for respondent State of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Nicholas Logothetis, on the brief).

PER CURIAM

Appellant, J.F., is currently committed to the Department of Corrections'

Special Treatment Unit (STU) for sexually violent predators. He appeals from

an order that revoked his conditional discharge from the STU and ordered that he continue to be committed to that facility. J.F. contends that during the commitment hearing the judge committed four errors: First, the judge shifted the burden of proof away from the State and to J.F. Second, the judge relied on inadmissible evidence when he determined that J.F.'s conditional discharge should be revoked. Third, contrary to the judge's finding, the use of alcohol did not make J.F. highly likely to engage in acts of sexual violence. Last, the judge failed to consider that J.F.'s current mental abnormality or personality disorder does not "make him a current risk of being highly likely to sexually reoffend." The record refutes these arguments. Accordingly, we affirm.

J.F., now age eighty-four, has a lengthy adult criminal history that began when he was eighteen years old. His history of sexual offenses dates to 1995, when he was found guilty by a jury of four counts of lewdness and four counts of endangering the welfare of a child.[1] Shortly before he completed his seven-year sentence, the State filed a petition seeking his civil commitment under the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. J.F. was

---

[1] The sexual offenses that resulted in J.F.'s civil commitment and the history of his appeals from continuing commitment orders are detailed in a previous reported opinion, In re Commitment of JJF, 365 N.J. Super. 486, 490-96 (App. Div. 2004).

A-2075-16T5

committed and remained in the STU until he was released — the first time — in accordance with a July 30, 2010 order that directed he be conditionally discharged by August 3, 2010.

The order was vacated two years later, in August 2012, following J.F.'s arrest for standing outside the fence of a "splash park," exposing himself, and masturbating while in view of a pre-teenage girl. J.F. pled guilty to third-degree endangering the welfare of a child and a judge sentenced him to serve three years at the Adult Diagnostic and Treatment Center (ADTC) at Avenel. When sentenced in April 2013, J.F. was seventy-seven years old.

Following his release from the ADTC, J.F. returned to the STU, where he remained until April 2015, when he was conditionally discharged again. The "Comprehensive Discharge Plan" included the "Clinical Recommendations" that J.F. "[a]void[] . . . high-risk situations including but not limited to parks, playgrounds, amusement parks, schools and beaches." The recommendations also included that J.F. "abstain[] from alcohol use."

Four months after his conditional discharge from the STU, in August 2015, J.F. was involved in another incident that resulted in the revocation of his conditional discharge. According to police investigation reports, on the afternoon of August 8, police responded to a call from a department store

manager that a male was masturbating in plain view of other patrons. Shortly after arriving at the department store, and after speaking with the store manager, the police encountered J.F., who "reeked of alcohol" and was holding an open twenty-five ounce can of beer.

According to the police report, the manager told the police that an adult customer and two minor female customers had informed her that a man had been standing between the toy section and men's section, looking at children and masturbating. The customers identified J.F. to the manager, and the manager identified J.F. to the police when they arrived. By the time the police arrived, however, the witnesses had left the store. The manager told the police she asked the witnesses to stay, but they refused, not wanting to get involved.

The police arrested J.F., issued a summons for consuming alcohol in public, and released him. The State Parole Board recommended "an order be signed as soon as administratively possible to have [J. F.] temporar[il]y re[-]committed to the STU for an evaluation . . . as he is clearly showing high-risk behavior, and has violated his condition of release by using alcohol."

On August 11, 2015, a judge vacated J.F.'s discharge and temporarily committed him. On October 15, 2015, J.F. knowingly and voluntarily stipulated the State's proofs "could prove by clear and convincing evidence that he

continues to be a sexually violent predator in need of civil commitment in a secure facility for control, care and treatment." In consequence, a judge entered an order committing J.F. to the STU and scheduling a review hearing for September 29, 2016.

On November 3, 2016, J.F. once again knowingly and voluntarily stipulated that the State's proofs "could prove by clear and convincing evidence that he continues to be a sexually violent predator in need of civil commitment in a secure facility for control, care and treatment." A judge entered an order committing J.F. to the STU and scheduling a review hearing for October 16, 2017.

On December 20, 2016, the judge commenced a review hearing after J.F. decided he did not wish to wait another year for another hearing. Apparently, as part of J.F.'s previous stipulation, he reserved the right to have a hearing if he changed his mind.

The State presented documentary evidence and the testimony of a psychiatrist and a psychologist, both of whom opined that J.F. suffered from mental abnormalities, including pedophilia, that predisposed him to commit acts of sexual violence, and that his risk of reoffending was high. J.F. presented no witnesses.

A-2075-16T5

Based on the State's proofs, the judge found by clear and convincing evidence that J.F.:

> has been convicted of a sexual violent offense. . . . [H]e continues to suffer from a mental abnormality personality disorder, does not spontaneously remit, can only [be] mitigated by treatment, affects him emotionally, cognitively, volitionally, serious difficulty controlling his sexual violent behavior, highly likely to sexually reoffend . . . presently by clear and convincing evidence.

The judge entered an order continuing J.F.'s commitment at the STU and scheduling a review hearing in a year. This appeal followed.

The SVPA authorizes the Attorney General to initiate court proceedings for involuntary commitment of sexually violent predators. N.J.S.A. 30:4-27.28. Sexually violent predators include persons

> who ha[ve] been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense . . . and suffer[] from a mental abnormality or personality disorder that makes [them] likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.
>
> [N.J.S.A. 30:4-27.26.]

Thus, to have a person committed under the SVPA, the State must prove by clear and convincing evidence three statutory criteria: the person has been convicted of a sexually violent offense; the person suffers from a mental abnormality or

6

personality disorder; and, as a result of such mental abnormality or personality disorder, "it is highly likely that the individual will not control his or her sexually violent behavior and will reoffend." In re Commitment of R.F., 217 N.J. 152, 173 (2014) (quoting In re Commitment of W.Z., 173 N.J. 109, 130, (2002)).

To continue the civil commitment of a sexually violent predator who has been committed to the STU, the State must prove "the individual has serious difficulty in controlling sexually harmful behavior such that it is highly likely that he or she will not control his or her sexually violent behavior and will reoffend." W.Z., 173 N.J. at 132. Similarly, to have a sexually violent predator's conditional discharge from the STU revoked, "the State must establish by clear and convincing evidence that the committee is highly likely not to control his or her sexually violent behavior and will reoffend." In re Civil Commitment of E.D., 183 N.J. 536, 551 (2005).

Our scope of review is "extremely narrow." R.F., 217 N.J. at 174. That is so because "judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to special deference." Ibid. (quoting In re Civil Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)). We generally will not modify the SVPA trial judge's determination to commit or

release an individual "unless the record reveals a clear mistake." Id. at 175 (internal citations omitted). "So long as the trial court's findings are supported by 'sufficient credible evidence present in the record,' those findings should not be disturbed." Ibid. (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). Here, credible evidence in the record supports the judge's findings, and the record dispels any notion that the judge made a clear mistake.

Except to say J.F.'s first argument — that the judge shifted the burden of proof to him and required that he either provide an expert or remain committed to the STU — is based on J.F.'s taking the judge's comments out of context and misconstruing them, the argument is so lacking in merit that it warrants no further discussion. R. 2:11-3(e)(1)(E). We thus turn to J.F.'s second argument, namely, the judge's decision was based on inadmissible hearsay.

J.F. contends the State's experts accepted as true, as did the judge, the hearsay reports that J.F. exposed himself and masturbated while in the department store drinking beer. The record belies the assertion the judge considered the evidence for its truth. When the psychiatrist began to recount how J.F. was reportedly exposing himself and masturbating in the department store, J.F.'s counsel objected to the testimony as hearsay. The Senior Deputy Attorney General responded that he was not eliciting the content of police

8

investigative reports for the truth of the statements contained in those reports, but to establish what the psychiatrist relied on in formulating his opinion. The judge expressly permitted the testimony for that "limited purpose."[2]

The facts or data upon which an expert bases an opinion need not be admissible in evidence "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." N.J.R.E. 703. In In re Commitment of J.M.B., 197 N.J. 563, 597-98 n.9 (2009), the Court noted with approval the "use of police reports, presentence reports and prior psychiatric evaluations" to, among other things, "evaluate the opinions of the testifying experts who considered these documents in reaching their diagnoses." The Court stated: "In respect of the commitment court's findings about J.M.B.'s current mental condition and whether he had demonstrated inability to

---

[2] We note the hearsay was included in the psychiatrist's report. The report had been admitted into evidence at the hearing a month earlier when defendant stipulated to the adequacy of the State's proofs. When the hearing began in December, the Senior Deputy Attorney General said to the judge, "we already had the exhibits moved in at the earlier hearing . . . just a month ago, so I would ask Your Honor to use those exhibits." During the hearing, the judge expressly admitted into evidence some exhibits. The record is unclear whether the parties assumed that all the exhibits admitted at the hearing in November were admitted at the hearing that is the subject of this appeal. The better practice for the judge and the attorneys would have been to make a clear and explicit record as to what documentary evidence was admitted into evidence, even though they may have been participants in multiple hearings involving J.F.

adequately control his sexually harmful conduct, we likewise affirm the trial court's reliance on the experts' opinions, which were based on a broad array of evidence about J.M.B." Id. at 598. Accord, In re Civil Commitment of W.X.C., 407 N.J. Super. 619, 641 (App. Div. 2009) (explaining that the trial court properly considered, as background in evaluating the opinions of experts, the experts' reliance "on reports concerning W.X.C.'s mental health, his criminal history, police reports, and clinical tests"), aff'd on other grounds, 204 N.J. 179 (2010).

It is a "well-established principle that '[e]videntiary decisions are reviewed under the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion.'" Rodriguez v. Wal-Mart Stores, Inc., 237 N.J. 36, 57 (2019) (quoting Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)). We find no abuse of discretion in the hearing judge's decision to admit the hearsay evidence for the limited purpose the judge specified.

In the final two points defendant raises on appeal, he argues the record does not show that J.F.'s use of alcohol made him highly likely to engage in acts of sexual violence, and the judge failed to consider that J.F.'s current mental abnormality or personality disorder does not make him a current risk of being

highly likely to sexually reoffend. The State's expert testimony, which the hearing judge found credible, refutes these assertions.

The psychiatrist diagnosed J.F. with pedophilia and a personality disorder, not otherwise specified, with antisocial features. His diagnosis of pedophilia was based on J.F.'s "history of offenses towards children over a long period of time, multiple years in which he's had various charges, and [his admissions] to arousal to children, and to masturbation [to] thoughts of children for many years." The doctor explained not only would that not go away, but even at "[eighty] years old [you can] have an allegation of what appears to be . . . sexually offensive type behaviors."

The psychiatrist diagnosed J.F. with the personality disorder, not otherwise specified, with antisocial traits, because J.F. meets all the criteria for antisocial personality disorder except for evidence of the disorder as a juvenile. Because there are no records and therefore no history of J.F.'s conduct in his teenage years, one element of antisocial personality disorders is missing; thus the diagnosis of personality disorder, not otherwise specified, with antisocial behavior.

The psychiatrist expressly testified that these disorders affect J.F. in a way that he has serious difficulty in controlling his sexually offending behavior in

11

the community without additional treatment.  He opined the risk of J.F. not controlling his sexually violent behavior and reoffending was "[h]igh risk. Highly likely.  High risk."

The psychiatrist also diagnosed J.F. with an alcohol use disorder.  He noted J.F.'s alcohol use had been associated with the most recent two incidents in which J.F. had been returned to the STU.  Asked how the alcohol related to the issue of sexual reoffending, the psychiatrist replied:

> It disinhibits an individual.  So [J.F.], I don't think he would personally take any issue with the fact that he's been diagnosed with pedophilic disorder, and that he's had arousal towards children in the past.  He's masturbated to thoughts of children in the past.  He has it inside of him.  And even though he's learned some treatment concepts drinking certainly could make one more likely to act out on their impulses.  We know that from the literature, clearly that substance use and intoxication is associated with a higher risk of sexual reoffending for those who have a history of sexual offending.

The State's expert in psychology gave similar testimony.  She diagnosed J.F. with pedophilic disorder, exhibitionist disorder, and other personality disorder.  She testified these disorders affect J.F. emotionally, cognitively, and volitionally so as to predispose him to commit acts of sexual violence.  She opined that J.F.'s "alcohol use disorder disinhibits his functioning and relates to his risk to reoffend also."  The psychologist characterized J.F.'s risk of sexually

12

reoffending in the foreseeable future, if not confined in a secure facility, as high.

Explaining her opinions, the psychologist said:

> So it's my opinion that he's significantly antisocial, struggling with a deviant arousal that's not being mitigated by his age. And now this is coupled with an alcohol abuse disorder, which we were unaware of. For the many years that I was evaluating him and he was at the STU, . . . he denied any historical abuse or difficulty with substances. It seems to have become present or we've been made aware of it since he's been discharged. So that is another factor that I feel aggravates his risk.
>
> Dynamically, he struggles with poor coping, emotional dysregulation, impulsivity, negative emotionality, and all of these factors should be addressed in future treatment.

The hearing judge's findings are supported by sufficient credible evidence present in the record. The record does not reveal that the judge made a clear mistake. Accordingly, we will not disturb the judge's decision. R.F., 217 N.J. at 175.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13