# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4331-18T5

IN THE MATTER OF THE
CIVIL COMMITMENT OF
T.T., SVP-226-02.

_____

Argued telephonically September 15, 2020 –
Decided September 21, 2020

Before Judges Yannotti and Haas.

On appeal from the Superior Court of New Jersey, Law
Division, Essex County, Docket No. SVP-226-02.

Alfred Anthony Egenhofer, Assistant Deputy Public
Defender, argued the cause for appellant T.T. (Joseph
E. Krakora, Public Defender, attorney; Alfred Anthony
Egenhofer, on the brief).

Stephen Slocum, Deputy Attorney General, argued the
cause for respondent State of New Jersey (Gurbir S.
Grewal, Attorney General, attorney; Melissa H. Raksa,
Assistant Attorney General, of counsel; Stephen
Slocum, on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

T.T. appeals from a May 24, 2019 Law Division order, which found him to be a sexually violent predator and continued his involuntary commitment in the Special Treatment Unit (STU) pursuant to the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.4 to -27.38.  We affirm.

T.T. committed his first sexual assault in 1976.  At that time, he grabbed a six-year old child and carried her into an abandoned apartment.  He removed the child's clothing and inserted two fingers and then his penis into her vagina.  T.T. later pled guilty to carnal abuse and was sentenced to five years in prison.

While on probation for a possession of a weapon offense in 1992, T.T. violently attacked a thirty-seven year old woman in her apartment.  T.T. stabbed the victim with scissors and hit her in the head with a bat.  When she regained consciousness, T.T. sexually assaulted the victim repeatedly, and slapped her on the head as he did so.  He also forced the victim to perform oral sex upon him, stabbed her with a screwdriver, and tried to smother her with a pillow.  T.T. plead guilty to first-degree aggravated sexual assault, second-degree aggravated assault, and third-degree terroristic threats.  The trial court sentenced him to an aggregate fifteen-year term in prison.

A-4331-18T5

In 2002, defendant was committed to the STU and has been confined there since that time. During this entire period, T.T. has refused all treatment offered to him by the STU staff.

At T.T.'s April 29, 2019 review hearing, the State presented the testimony of Howard Gilman, M.D., an expert psychiatrist, and the testimony of an expert psychologist, Paul Dudek, Ph.D. T.T. testified at the hearing, and presented the testimony of Dr. Gerald Cooke, an expert psychologist.

Dr. Gilman diagnosed T.T. with the following mental conditions: (1) Alcohol Use Disorder in Institutional Remission; (2) Cannabis Use Disorder in Institutional Remission; and (3) Antisocial Personality Disorder. Dr. Gilman stated in his report that T.T.

> remains an untreated repeated sexual offender. He has acted out sexually on at least two occasions and he has been arrested for such behavior three times. He has shown versatility in his sexual acting out, sexually assaulting children as well as adults. He has acted in a violent manner towards at least one of his victims. He continues to refuse treatment for his sexually offending behavior. [T.T.] continues to be at high risk to sexually reoffend due to his history of repeated sexual assaults, his history of untreated substance dependence, his history of Antisocial Personality Disorder, and his history of untreated sex offending behavior[.]

Dr. Dudek diagnosed T.T. with the following mental abnormalities: (1) Other Specified Paraphilic Disorder (non-consent and pedophilic features); (2)

3

Alcohol Use Disorder, Severe, In a Controlled Environment; (3) Cannabis Use Disorder, Severe, In a Controlled Environment; and (4) Other Specified Personality Disorder with Antisocial Features. Dr. Dudek opined that T.T. "ha[d] not made any appreciable progress towards lowering his risk to reoffend" since the time of his last review hearing and, therefore, T.T. "remain[ed] highly likely to reoffend sexually if not confined to a secure facility such as the STU."

Testifying on T.T.'s behalf, Dr. Cooke diagnosed T.T. with (1) Severe Alcohol Use Disorder, and (2) Other Specified Paraphilic Disorder, Non-Consent by history. Although he conceded that T.T. "engaged in some antisocial behavior many years ago," Dr. Cooke did not believe T.T. had a personality disorder because he had behaved himself while in the controlled atmosphere of the STU. Dr. Cooke conceded that defendant did not have access to female or child victims while confined.

Dr. Cooke conducted actuarial tests which he stated placed T.T. in a group that has a 7.1 percent likelihood of reoffending. However, Dr. Cooke noted that the tests pertain to groups, rather than individuals, and that individualized assessment is required to determine the risk of committing a new offense.

In his testimony, T.T. admitted that he had refused to participate in any sex offender treatment while confined at the STU. He stated he would never

4

discuss his sexual offenses with any therapist and would not participate in such treatment as part of a conditional discharge plan.

Following the hearing, Judge Philip M. Freedman rendered a comprehensive oral opinion and concluded that T.T. should remain committed at the STU. In so ruling, the judge credited the testimony presented by Dr. Gilman and Dr. Dudek and discounted the opinions offered by Dr. Cooke. The judge found by clear and convincing evidence that T.T.

> suffers from . . . mental abnormalities and a personality disorder which individually and in combination . . . predispose him, as his record shows, to engage in acts of sexual violence, amongst other things, and that if released he would have serious difficulty controlling his sexually violent behavior and would within the reasonably foreseeable future be highly likely to engage in acts of sexual violence.

This appeal followed.

In a brief prepared by his appellate counsel, T.T. argues that the State failed to prove by clear and convincing evidence that he currently suffers from a mental abnormality that affects his emotional, volitional, or behavioral control. He asserts he was inappropriately diagnosed with Antisocial Personality

Disorder, and he is an actuarial pool of persons who reoffend at a rate of 7.1 percent.[1] We disagree.

The governing law is clear. An involuntary civil commitment under the SVPA can follow an offender's service of a custodial sentence, or other criminal disposition, when he or she "suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." N.J.S.A. 30:4-27.26.

As defined by the statute, a "mental abnormality" consists of "a mental condition that affects a person's emotional, cognitive or volitional capacity in a manner that predisposes that person to commit acts of sexual violence." Ibid. The mental abnormality or personality disorder "must affect an individual's ability to control his or her sexually harmful conduct." In re Commitment of W.Z., 173 N.J. 109, 127 (2002). A showing of an impaired ability to control

---

[1] In a pro se supplemental brief, T.T. asserts that: (1) the hearing transcript does not indicate whether the witnesses were sworn; (2) the trial judge erred by considering a 1992 presentence report; (3) the State failed to prove the criteria for his involuntary commitment by clear and convincing evidence; and (4) the State's experts incorrectly framed their opinions in terms of possibilities, rather than probabilities. These arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

A-4331-18T5

sexually dangerous behavior will suffice to prove a mental abnormality.  Id. at 129; In re Civil Commitment of R.F., 217 N.J. 152, 173-74 (2014).

At a commitment hearing, the State has the burden of proving under the SVPA that the offender poses a threat:

> to the health and safety of others because of the likelihood of his or her engaging in sexually violent acts. . . .  [T]he State must prove that threat by demonstrating that the individual has serious difficulty in controlling sexually harmful behavior such that it is highly likely that he or she will not control his or her sexually violent behavior and will reoffend.
>
> [W.Z., 173 N.J. at 132.]

The court must address the offender's "present serious difficulty with control over dangerous sexual behavior."  Id. at 132-33 (emphasis omitted).  To commit the individual to the STU, the State must establish, by clear and convincing evidence, that it is highly likely that the individual will reoffend.  Id. at 133-34; see also R.F., 217 N.J. at 173.

In this appeal, our review of Judge Freedman's decision is "extremely narrow."  R.F., 217 N.J. at 174 (quoting In re D.C., 146 N.J. 31, 58 (1996)).  "The judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'"  Ibid. (quoting In re Civil Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)).  On appeal,

7

we will not disturb the SVPA judge's decision unless there was a clear abuse of discretion, and "it is our responsibility to canvass the record, inclusive of the expert testimony, to determine whether the findings made by the . . . judge were clearly erroneous." In re Civil Commitment of W.X.C., 407 N.J. Super. 619, 630 (App. Div. 2009), aff'd, 204 N.J. 179 (2010).

Applying these well-established standards, we affirm the order for T.T.'s continued commitment at the STU, substantially for the reasons detailed in Judge Freedman's oral opinion. The judge was entitled to find the State's experts' assessment of T.T.'s risk of re-offense more persuasive than the views of Dr. Cooke. Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 85-86 (App. Div. 1961) (recognizing the fact-finder's prerogative to accept the opinions of certain testifying experts and to reject competing opinions of an opposing expert).

As the testimony revealed, T.T. has never participated in active treatment to address the disorders that led him to commit the sexually violent offenses that required his commitment under the SVPA. Although we are mindful, as was Judge Freedman, that T.T.'s last sexually violent offense occurred in 1992, the gap in time itself does not signify that he has the ability to control his sexual

urges if he were released.  There is ample credible evidence in the record to support Judge Freedman's findings.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION