# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1183-19T5

IN THE MATTER OF THE CIVIL
COMMITMENT OF W.W.,
SVP-667-13

_____

Submitted January 12, 2021 – Decided January 26, 2021

Before Judges Haas and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-667-13.

Joseph E. Krakora, Public Defender, attorney for appellant W.W. (Jared I. Mancinelli, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent State of New Jersey (Melissa H. Raksa, Assistant Attorney General, of counsel; Stephen Slocum, Deputy Attorney General, on the brief).

PER CURIAM

Appellant W.W. appeals from an October 16, 2019 Law Division order, which found him to be a sexually violent predator and continued his involuntary

commitment in the special Treatment Unit (STU) pursuant to the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38.  We affirm.

A judge committed W.W. to the STU in February 2013 pursuant to the SVPA.  The events that culminated in his commitment, including the sexual assaults he committed against developmentally disabled women, are recounted in our decision that affirmed that committal order and need not be repeated here. In re Civil Commitment of W.W. (W.W. I), No. A-3281-12 (Apr. 18, 2016), certif. denied, 327 N.J. 353 (2016).

Following a review hearing, a judge found "the State had clearly and convincingly proven [that] W.W. continued to be a sexually violent predator in need of civil commitment in a secure facility for control, care and treatment." In re Civil Commitment of W.W. (W.W. II), No. A-5239-16 (Sept. 3, 2019) (slip op. at 2).  Therefore, W.W. remained committed at the STU.

W.W.'s next review hearing, which was held on October 10, 2019 before Judge Philip M. Freedman, is the subject of the present appeal.  The State relied upon the testimony of a psychiatrist and a psychologist.  Defendant testified on his own behalf but did not present any expert witnesses.

Emily A. Urbina, M.D. was accepted by the court as an expert in psychiatry.  Dr. Urbina diagnosed W.W. with other Specified Paraphilic

Disorder, Coercive, Antisocial Personality Disorder, and multiple substance abuse disorders. Dr. Urbina opined that none of these diagnoses would spontaneously remit and, therefore, W.W. required continued treatment to learn to control his sexually violent tendencies.

According to Dr. Urbina, W.W.'s Static-99R results placed W.W. in the "well above average" risk group. Dr. Urbina also noted that W.W.'s dynamic risk factors, which included "sexual deviancy, difficulty with self-regulation, poor cognitive problem[-solving] skills, [and] limited cooperation with supervision," demonstrated his individual high risk to reoffend.

Christine Zavalis, Psy.D. was accepted as an expert in psychology by the court and was a member of the Treatment Progress Review Committee (the Committee) that evaluated W.W.'s progress in treatment. The Committee recommended that W.W. needed continued treatment, but W.W. was resistant to it, which highlighted his antisociality and his ongoing high risk to reoffend.

W.W. testified that there was a procedural error made at his initial screening for the SVPA in 2013. However, Judge Freedman pointed out that this issue was moot in light of the fact that the Appellate Division affirmed the commitment order in W.W. I.

A-1183-19T5

Following the hearing, Judge Freedman rendered a comprehensive oral opinion and concluded that W.W. should remain committed at the STU. In so ruling, the judge found by clear and convincing evidence that W.W. had been convicted of a sexually violent offense and "suffer[ed] from . . . mental abnormalities and a personality disorder that separately, and certainly in conjunction with each other, predispose [W.W.] to engage in acts of sexual violence, as his record and his admissions in evaluations and in treatment clearly indicate." The judge further found

> that if [W.W.] were released he would have serious difficulty controlling his sexually violent behavior and would, within the reasonably foreseeable future[,] be highly likely to engage in acts of sexual violence. He's at the beginning stages of treatment despite having been [at the STU] for a number of years. He's fixated on some legal issue which I don't see exists, and he is really not engaging in treatment, unfortunately, based on my review of the treatment notes.

This appeal followed.

On appeal, W.W. argues that "the State presented insufficient evidence to support a finding that W.W. required commitment to the [STU]." We disagree.

The governing law is clear. An involuntary civil commitment under the SVPA can follow an offender's service of a custodial sentence, or other criminal disposition, when he or she "suffers from a mental abnormality or personality

4

disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment."  N.J.S.A. 30:4-27.26.

As defined by the statute, a "mental abnormality" consists of "a mental condition that affects a person's emotional, cognitive or volitional capacity in a manner that predisposes that person to commit acts of sexual violence."  Ibid. The mental abnormality or personality disorder "must affect an individual's ability to control his or her sexually harmful conduct."  In re Commitment of W.Z., 173 N.J. 109, 127 (2002).  A showing of an impaired ability to control sexually dangerous behavior will suffice to prove a mental abnormality.  Id. at 129; In re Civil Commitment of R.F., 217 N.J. 152, 173-74 (2014).

At a commitment hearing, the State has the burden of proving under the SVPA that the offender poses a threat:

> to the health and safety of others because of the likelihood of his or her engaging in sexually violent acts . . . .  [T]he State must prove that threat by demonstrating that the individual has serious difficulty in controlling sexually harmful behavior such that it is highly likely that he or she will not control his or her sexually violent behavior and will reoffend.
>
> [W.Z., 173 N.J. at 132.]

A-1183-19T5

The court must address the offender's "present serious difficulty with control over dangerous sexual behavior." Id. at 132-33 (emphasis omitted). To commit the individual to the STU, the State must establish, by clear and convincing evidence, that it is highly likely that the individual will reoffend. Id. at 133-34; see also R.F., 217 N.J. at 173.

In this appeal, our review of Judge Freedman's decision is "extremely narrow." R.F., 217 N.J. at 174 (quoting In re D.C., 146 N.J. 31, 58 (1996)). "The judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'" Ibid. (quoting In re Civil Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)). On appeal, we will not disturb the SVPA judge's decision unless there was a clear abuse of discretion, and "it is our responsibility to canvass the record, inclusive of the expert testimony, to determine whether the findings made by the . . . judge were clearly erroneous." In re Civil Commitment of W.X.C., 407 N.J. Super. 619, 630 (App. Div. 2009), aff'd, 204 N.J. 179 (2010).

Applying these well-established standards, we affirm the order for W.W.'s continued commitment at the STU, substantially for the reasons detailed in Judge Freedman's oral opinion. The judge was entitled to accept Dr. Urbina's uncontradicted expert assessment as to W.W.'s risk of re-offense. W.W. has not

cooperated with the treatment required to address the disorders that led him to commit the sexually violent offenses that required his commitment under the SVPA.

In so ruling, we reject W.W.'s contention that because he has not committed a sexually violent offense since February 2000, he is no longer in need of commitment. W.W.'s argument ignores the fact that he has been incarcerated or committed to the STU since his conviction for that offense. Therefore, this gap in time does not signify that W.W. has the ability to control his sexual urges if he were released from his controlled environment.

Finally, W.W. argues that Judge Freedman erred by finding that he preyed upon developmentally disabled victims who were weaker than him. W.W. claims that he, himself, scored below average on two I.Q. tests and, therefore, was also developmentally disabled. This contention lacks merit. As Dr. Urbina testified, W.W. exhibited no functional or cognitive limitations, which indicated that he was simply uncooperative with the earlier I.Q. testing. Thus, there is ample credible evidence in the record to support Judge Freedman's finding.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1183-19T5