**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5509-18T5

IN THE MATTER OF THE
CIVIL COMMITMENT OF
P.P., SVP-711-15.

_____

Submitted October 19, 2020 – Decided February 1, 2021

Before Judges Hoffman and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-711-15.

Joseph E. Krakora, Public Defender, attorney for appellant P.P. (Patrick Madden, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent State of New Jersey (Melissa H. Raksa, Assistant Attorney General, of counsel; Stephen Slocum, Deputy Attorney General, on the brief).

PER CURIAM

P.P., a resident committed under the Sexually Violent Predators Act, appeals from a judgment continuing his involuntary commitment to the Special Treatment Unit (STU), the secure custodial facility designated for the

treatment of persons in need of commitment pursuant to the New Jersey Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. For the reasons set forth below, we affirm.

I.

On January 13, 2015, the State petitioned for civil commitment of P.P. under the SVPA. On June 6, 2018, a judge ordered P.P. committed to the STU. During P.P.'s annual review hearing on June 28, 2019, the State produced two expert witnesses, Dr. Alberto Goldwaser, a psychiatrist, and Dr. Eugene Dunaev, a psychologist. P.P. testified at the hearing but offered no expert witness testimony.

Dr. Goldwaser diagnosed P.P. with other specified paraphilic disorder (non-consent, non-exclusive; underage adolescent girls/manifestations of hebephilic disorder), antisocial personality disorder (ASPD), and a "provisional diagnosis" of pedophilic disorder. However, the judge disregarded Dr. Goldwaser's ASPD diagnosis, because the doctor failed to cite any diagnosis of conduct disorder before age fifteen, a required element for ASPD.

Dr. Goldwaser opined that P.P. is at high risk to reoffend in the foreseeable future. Based on static and dynamic factors, Dr. Goldwaser gave

P.P. a Static-99R[1] score of seven. He testified this score placed P.P. "well above average" for reoffending. Dr. Goldwaser also testified that he considered certain dynamic factors which support his opinion that P.P. would likely reoffend. One dynamic factor highlighted by Dr. Goldwaser was P.P.'s inability to obey rules. As an example, the doctor cited P.P. improperly possessing a cell phone while confined at the STU. An additional consideration for Dr. Goldwaser in reaching his opinion was P.P.'s stated belief that he did not need to learn relapse prevention skills.

Dr. Dunaev also testified for the State. Dr. Dunaev served on the Treatment Progress Review Committee (TPRC) at the STU. The doctor testified that P.P. had three primary issues: difficulty learning in treatment, difficulty learning from supervision, and difficulty learning from punishment.

Dr. Dunaev diagnosed P.P. with other specified paraphilic disorder with hebephilic and pedophilic traits, as well as other specified personality disorder with antisocial and narcissistic features. The doctor opined that P.P. had not received enough treatment to warrant release. He gave P.P. a Static-99R score of five. The doctor testified people in this category have issues with self-

---

[1] The Static-99R is an actuarial test used to estimate the probability of sexually violent recidivism in adult males previously convicted of sexually violent offenses. See Andrew Harris, et al., Static-99 Coding Rules Revised-2003 5 (2003).

regulation, emotional regulation, and sexual issues. He testified P.P.'s dynamic issues include poor cognitive problem solving, negative response to supervision and treatment, social rejection issues, lack of concern for others, impulsivity, and issues with deviant sexual interests. Dr. Dunaev characterized P.P.'s risk to reoffend in the foreseeable future as high, based on P.P.'s static and dynamic factors.

The judge found the two experts credible, and noted their testimony was uncontroverted. The judge did not find P.P. credible. He also found "there [was] insufficient evidence to justify" Dr. Goldwaser's antisocial personality disorder diagnosis. He further found the State proved by clear and convincing evidence that P.P. would have "serious difficulty controlling his sexually violent behavior" and would be highly likely to engage in acts of sexual violence in the reasonably foreseeable future. Ultimately, the judge denied release and continued P.P.'s involuntary commitment, and this appeal followed.

## II.

On appeal P.P. raises two points for our consideration.

### POINT ONE

THE TRIAL COURT ERRED IN ASSISTING AND THEN CREDITING THE PSYCHIATRIST FOR THE STATE.

4

POINT TWO

THE STATE FAILIED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT P.P. WAS HIGHLY LIKELY TO COMMIT A SEXUALLY VIOLENT OFFENSE IN THE FORSEEABLE FUTURE.

"The scope of appellate review of a commitment determination is extremely narrow." In re Civil Commitment of R.F., 217 N.J. 152, 174 (2014) (quoting In re D.C., 146 N.J. 31, 58 (1996)). The trial judge's decision is owed the utmost deference, and the appellate court should only modify where the record reveals a clear abuse of discretion. In re J.P., 339 N.J. Super. 443, 459 (App. Div. 2001) (citing State v. Fields, 77 N.J. 282, 311 (1978)); see also R.F., 217 N.J. at 175 ("An appellate court should not overturn a trial court's findings because it might have reached a different conclusion were it the trial tribunal or because the trial court decided all evidence or inference conflicts in favor of one side in a close case"). We owe a trial judge's decision the utmost deference because they hear and see the witness and have "a feel of the case, which a reviewing court cannot enjoy." R.F., 217 N.J. at 174 (2014) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Further, "[t]he judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference'." Ibid. (quoting In re Civil Commitment of

5                                                        A-5509-18T5

T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)). "A trial judge is 'not required to accept all or any part of [an] expert opinion.'" Ibid. (quoting D.C., 146 N.J. at 58).

"An appellate court should not modify a trial court's determination either to commit or release an individual unless 'the record reveals a clear mistake.'" Id. at 175 (quoting D.C., 146 N.J. at 58). "The appropriate inquiry is to canvass the significant amount of expert testimony in the record and determine whether the lower courts' findings were clearly erroneous." D.C., 146 N.J. at 58-59 (citing Fields, 77 N.J. at 311). Thus, "[s]o long as the trial court's findings are supported by 'sufficient credible evidence present in the record,' those findings should not be disturbed." R.F., 217 N.J. at 175 (quoting Johnson, 42 N.J. at 162).

"The Legislature enacted the SVPA to protect other members of society from the danger posed by sexually violent predators." In re Commitment of J.M.B., 197 N.J. 563, 570-71 (2009) (citing N.J.S.A. 30:4-27.25). Thus, the SVPA allows the State to involuntarily commit a sexually violent offender who "suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." R.F., 217 N.J. at 173 (quoting N.J.S.A. 30:4-27.26).

6

To involuntarily commit a person under the SVPA,

> the State must establish three elements: (1) that the individual has been convicted of a sexually violent offense; (2) that he suffers from a mental abnormality or personality disorder; and (3) that as a result of his psychiatric abnormality or disorder, it is highly likely that the individual will not control his or her sexually violent behavior and will reoffend
>
> [Ibid. (citing In re Commitment of W.Z., 173 N.J. 109, 130 (2002)).]

The State has the burden of proving each element by clear and convincing evidence. Ibid. "Clear and convincing evidence is evidence that produces 'a firm belief or conviction' that the allegations are true; it is evidence that is 'so clear, direct and weighty and convincing' that the factfinder can 'come to a clear conviction' of the truth without hesitancy." Ibid. (quoting In re Jobes, 108 N.J. 394, 407 (1987)).

Under the SVPA, mental abnormality "means a mental condition that affects a person's emotional, cognitive or volitional capacity in a manner that predisposes that person to commit acts of sexual violence." N.J.S.A. 30:4-27.26. Further, although personality disorder is not defined, under the SVPA, a personality disorder must affect the individual's ability to control sexually harmful conduct. See W.Z., 173 N.J. at 127. To meet this standard, "the State must prove that the alleged predator's 'propensity to commit acts of sexual violence is of such a degree as to pose a threat to the health and safety of

7

others.'" In re Civil Commitment of A.H.B., 386 N.J. Super. 16, 24 (App. Div. 2006) (quoting N.J.S.A. 30:4-27.26).

Further, the SVPA requires that, as a result of the mental abnormality or personality disorder, the person must be likely to "engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." W.Z., 173 N.J. at 120 (quoting N.J.S.A. 30:4-27.26). The Court has construed the phrase "likely to engage in acts of sexual violence" to mean that the State must prove "it is highly likely that he or she will not control his or her sexually violent behavior and will reoffend". Id. at 132.

Moreover, the State must offer testimony on a person's involuntary commitment from expert witnesses at a review hearing. Under the SVPA, "a psychiatrist on the person's treatment team who has conducted a personal examination of the person shall testify at the hearing to the clinical basis for the need for involuntary commitment." N.J.S.A. 30:4-27.30. N.J.S.A. 30:4-27.26 defines "treatment team" as "individuals, agencies or firms which provide treatment, supervision or other services at a facility designated for the custody, care and treatment of sexually violent predators." A.H.B., 386 N.J. Super. at 25 (quoting N.J.S.A. 30:4-27.26).

Finally, a person committed under the SVPA must receive an annual review hearing to determine whether they will be released. N.J.S.A. 30:4-

27.35. The State retains the burden of proving the evidence by clear and convincing evidence; however, "an individual should be released when a court is convinced that he or she will not have serious difficulty controlling sexually violent behavior and will be highly likely to comply with [a] plan for safe reintegration into the community." W.Z., 173 N.J. at 130.

### III.

Adhering to our "extremely narrow scope of review", R.F., 217 N.J. at 174 (citing D.C., 146 N.J. at 58), we affirm.

P.P. argues that the judge erred in assisting and then crediting the psychiatrist for the State. P.P. correctly states that Dr. Goldwaser's diagnosis of ASPD is unsupported in the record. There was no evidence of conduct disorder before P.P. turned fifteen years old. Next, P.P. argues that the judge relied upon Dr. Goldwaser's unsupported ASPD diagnosis in reaching his decision. Armed with this incorrect assumption, P.P. argues that the State failed to meet its burden of producing competent expert testimony at the hearing. This argument fails where the hearing judge rejected Dr. Goldwaser's testimony on ASPD and did not rely upon that portion of the doctor's opinion. The judge is "not required to accept all or any part" of Dr. Goldwaser's expert opinion. Ibid. (quoting D.C., 146 N.J. at 58).

A-5509-18T5

However, the State produced other credible and competent medical expert opinions, including medically supported diagnoses of Dr. Goldwaser as well as expert testimony of Dr. Dunaev. P.P. produced no expert witness to contradict the State's experts. Dr. Goldwaser and Dr. Duneav both diagnosed P.P. with other specified paraphilic disorder. They each testified that this disorder predisposed him to reoffend. After canvassing the expert testimony in this record, we see no findings by the judge that are "clearly erroneous". D.C., 146 N.J. at 58-59. (citing Fields, 77 N.J. at 311).

Next, P.P. argues that the State failed to show by clear and convincing evidence that P.P. was highly likely to commit a sexually violent offense in the foreseeable future. P.P. points to Dr. Goldwaser's unsupported ASPD diagnoses, P.P.'s lack of problematic behavior while he was a resident and his efforts in treatment. P.P. also argues he was cooperative in group sessions and participated productively, openly discussing his past and refraining from disruption. We disagree.

There is "sufficient credible evidence" to support the judge's findings. R.F., 217 N.J. at 175 (quoting Johnson, 42 N.J. at 162). Both doctors gave opinions regarding P.P.'s probability to re-offend in the reasonably foreseeable future. Dr. Goldwaser believed P.P.'s chances to re-offend are very high. Dr. Goldwaser's opinion was based on static and dynamic test factor results. One

of the dynamic factors, a lack of ability to obey the rules in the community or in STU, stood out to the expert. Finally, Dr. Goldwaser noted that P.P. himself did not believe he needed to learn relapse prevention skills, a belief Dr. Goldwaser opined increased P.P.'s risk to re-offend.

Dr. Dunaev was of the opinion that P.P. was a high risk to reoffend in the foreseeable future. The doctor found P.P. only saw the world from his point of view, had continual problems with complying with supervision and treatment, had poor cognitive problem-solving skills, was impulsive, and had a lack of concern for others. Further, Dr. Dunaev found P.P will "never comply with the STU's conditional discharge process" because P.P. does not believe in it.

The judge properly considered the uncontroverted expert opinions, while specifically rejecting the unsupported aspect of Dr. Goldwaser's opinion. We are satisfied the judge's finding that the State proved its case for P.P.'s continued involuntary commitment by clear and convincing evidence is "supported by 'sufficient credible evidence present in the record,' and that [his] findings should not be disturbed." Ibid. (quoting Johnson, 42 N.J. at 162).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION