# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1755-20

IN THE MATTER OF THE
CIVIL COMMITMENT OF
M.A.

_____

Argued January 13, 2022 – Decided February 22, 2022

Before Judges Haas and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. SVP-758-16.

Susan Remis Silver, Assistant Deputy Public Defender, argued the cause for appellant M.A. (Joseph E. Krakora, Public Defender, attorney; Susan Remis Silver, on the briefs).

Stephen Slocum, Deputy Attorney General, argued the cause for respondent State of New Jersey (Andrew J. Bruck, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Stephen Slocum, on the brief).

PER CURIAM

M.A. appeals from a March 2, 2021 order of the Law Division recommitting him to the Special Treatment Unit (STU) for the custody, care, and treatment of sexually violent predators. We affirm.

We discern the following facts from the record. Prior to the subject incident, M.A. had a criminal history consisting of four sexual assaults. On June 16, 2009, M.A. sexually assaulted a twenty-four-year-old woman by following her on the street, groping her buttocks, and attempting to lift her skirt. He has provided conflicting accounts of this offense, at times admitting to it, and at other times claiming that he was high on PCP and has no memory of it. For that offense, M.A. pleaded guilty to criminal sexual contact.

On August 25, 2009, M.A. sexually assaulted a seventeen-year-old female who was walking on her college campus. He approached her, groped her, and attempted to carry her away before being interrupted by other students and campus security. M.A. claims to have been under the influence of PCP for this offense as well and, therefore, has no memory of the assault. The charges for this offense were resolved as part of his guilty plea for the June 2009 offense.

On March 10, 2012, M.A. was arrested for the attempted rape of a twenty-one-year-old masseuse. M.A. asked the masseuse how much a massage with a "happy ending" would cost, and when she declined his proposition, he donned a

black ski mask. The masseuse asked if she could use the bathroom before complying, and when he let her go, she used the opportunity to call the police. After a short time, he followed her into the bathroom, grabbed her by the arms, and dragged her out in front of the massage rooms. M.A. had his pants partially down with his penis exposed and was wearing a condom. The masseuse was able to escape into one of the massage rooms, but M.A. forced his way into the room, threw her to the ground, and forcefully removed her underwear and pants. She told M.A. that she already called the police, causing him to flee. The police apprehended M.A. shortly thereafter.

On December 10, 2013, while on bail for the 2012 offense, M.A. groped the buttocks of a twenty-nine-year-old female at a PATH train station while riding the escalator behind her. After groping her buttocks, M.A. followed her up the street, where she ran away from him several times out of fear of further harm. M.A. kept his hand in his pocket as if he had a weapon he intended to use against her. M.A. claims to have no memory of this offense because he was high on PCP. For this offense, M.A. pleaded guilty to criminal sexual contact.

As a result of these offenses, the State successfully sought M.A.'s commitment to the STU under the Sexually Violent Predator Act (SVPA),

A-1755-20

N.J.S.A. 30:4-27.24 to -27.38, in December 2016. He was conditionally discharged in September 2019.

On May 9, 2020, M.A. and his girlfriend went shopping for a big-screen television. The TV they purchased would not fit in the trunk of their car. As a result, the pair decided to call for a Lyft driver with an SUV large enough to accommodate the TV and transport it back to M.A.'s home.

A female Lyft driver between thirty and forty-years-old arrived to drive M.A. and the TV home. While the TV was being loaded into the driver's car, it apparently came close to breaking or damaging one of the windows, causing the driver and M.A.'s girlfriend to argue and exchange curse words. M.A.'s girlfriend did not ride in the Lyft.

During the ensuing drive, M.A. sat in the back seat and played loud music from his phone. When the driver asked him to turn it down, he told her to "suck my dick." M.A. repeatedly told the driver to "suck my dick" during the ride. At one point, M.A. told her that he had a gun and was going to use it to compel her to bring the TV into his house and perform fellatio on him. The driver became so concerned by his statements that she pulled over, abandoned her car, and ran to find someone to help her call the police. This occurred approximately ten or eleven houses from M.A.'s house.

M.A. testified that he never threatened her with a gun and never claimed to have one. He explained that he only told her to "suck my dick" in order to be "disrespectful towards her" after the initial confrontation loading the TV and when she asked him to turn his music down. He further testified that once the driver exited the car, he "waited a while" for her to return, and when she did not, he "[p]ulled [the] T.V. out" and "dragged [it] down the street." The driver never saw the gun that M.A. claimed he possessed.

When the police arrived, the officers spoke with the driver and a witness who heard her screaming to call the police. This witness also observed M.A. remove the TV from the back seat and proceed down the block. The officers later observed M.A. exit his building, and when they attempted to question him, he ran back inside. M.A. later came outside again and the officers began speaking with him. He then attempted to go back inside again and at that point the officers detained him.

After M.A.'s arrest, the State moved to terminate his conditional discharge and recommit him under the SVPA. At the two-day recommitment hearing, the State presented the expert testimony of Dr. Dean DeCrisce, M.D., a licensed psychiatrist, and Dr. Kelly Kovack, Psy.D., a psychologist. M.A. presented the

expert testimony of psychologist Dr. Christopher Lorah, Ph.D. and the testimony of his mother and girlfriend. M.A. also testified.

At the conclusion of the hearing, the judge found the State's experts to be more credible and ordered M.A. to be recommitted based on the events of May 9, 2020. He modified the statutorily-mandated annual review to a six month review to re-evaluate M.A.'s progress moving forward. The judge issued a supplemental opinion on April 5 and 6, 2021 pursuant to Rule 2:5-1 after M.A. filed his notice of appeal.

On appeal, M.A. presents the following arguments for our consideration:

POINT I

THE TRIAL COURT IMPROPERLY RELIED ON HEARSAY FOR ITS TRUTH WHEN IT FOUND M.A. COMMITTED A SEX OFFENSE ON MAY 9, 2020.

A. The State Failed to Introduce Any Evidence to Prove that M.A. Sexually Threatened the Lyft Driver with a Gun.

B. The State Introduced No Evidence that the Driver Ran From Her Car Screaming for the Police.

C. The State Presented No Evidence that M.A. Tried to Flee or Gave a False Name When Police Came to Arrest Him or Take Him to the STU.

6

POINT II

THE TRIAL COURT VIOLATED M.A.'S FIFTH AMENDMENT RIGHT TO REMAIN SILENT WHEN IT INFERRED GUILT FROM HIS DECISION NOT TO TALK TO THE POLICE AND VIOLATED HIS DUE PROCESS RIGHTS WHEN IT THEN USED THIS INFERENCE OF GUILT TO FIND THAT HE NEEDED RECOMMITMENT.

"[O]ur review of [a judgment of] commitment[] pursuant to the SVPA is limited." In re Civil Commitment of T.J.N., 390 N.J. Super. 218, 225 (App. Div. 2007). "We can only reverse a commitment for an abuse of discretion or lack of evidence to support it." Ibid. "Moreover, the committing judges under the SVPA are specialists in the area, and we must give their expertise in the subject special deference." Id. at 226. "The appropriate inquiry is to canvass the . . . expert testimony in the record and determine whether the lower courts' findings were clearly erroneous." In re D.C., 146 N.J. 31, 58-59 (1996).

We uphold a trial judge's "determination either to commit or release an individual unless 'the record reveals a clear mistake.'" In re Civil Commitment of R.F., 217 N.J. 152, 175 (2014) (quoting D.C., 146 N.J. at 58). "So long as the trial court's findings are supported by 'sufficient credible evidence present in the record,' those findings should not be disturbed." Ibid. (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).

Three requirements must be satisfied to prove the need for a person's civil commitment. The person must 1) have been "convicted, adjudicated delinquent or found not guilty by reason of insanity for [the] commission of a sexually violent offense, or . . . charged with a sexually violent offense but found to be incompetent to stand trial," 2) suffer "from a mental abnormality or personality disorder" predisposing him to commit acts of sexual violence, and 3) as a result, be "likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." N.J.S.A. 30:4-27.26. Prongs one and two are not in dispute in this case. M.A. claims that because the State did not call the Lyft driver or the witness to testify, the State's experts relied entirely on inadmissible hearsay, and the evidence was therefore insufficient to establish the likelihood he would reoffend. We disagree.

When determining the likelihood of a person to engage in acts of sexual violence for the purposes of the SVPA, the court seeks to determine "the propensity of a person to commit acts of sexual violence . . . of such a degree as to pose a threat to the health and safety of others." N.J.S.A. 30:4-27.26. The term "likely" is not defined in the statute, but the Supreme Court has explained that an individual's likelihood to commit sexually violent acts relates to the necessary lack of control determination. In re Commitment of W.Z., 173 N.J.

109, 130 (2002). The Court has also recognized that predictions of future dangerousness are permitted as a basis of civil commitment when that dangerousness is coupled with "a finding of mental illness or abnormality." Id. at 132. A court does not need to determine with statistical certainty if or when a person will reoffend; it must find only that the person has "serious difficulty in controlling sexually harmful behavior such that it is highly likely that he or she will not control his or her sexually violent behavior and will reoffend." Ibid. Further, "experts generally agree that the best predictor of a registrant's future criminal sexual behavior is that registrant's prior criminal record." In re Registrant C.A., 146 N.J. 71, 90 (1996).

In seeking an order of commitment, the State is statutorily required to present a psychiatrist's testimony, based on his or her personal examination of the potential committee. N.J.S.A. 30:4-27.30(b); T.J.N., 390 N.J. Super. at 222-24. While out-of-court statements used to prove the truth of the matter asserted are generally inadmissible under N.J.R.E. 802, an evaluating expert who has relied on an out-of-court statement in forming his or her opinion may testify to it at trial, so long as the information is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." N.J.R.E. 703; see In re Civil Commitment of E.S.T., 371 N.J. Super.

562, 571 (App. Div. 2004). Therefore, in addition to his or her personal examination, a psychiatrist may rely on other information in forming an opinion, such as presentence reports, ADTC evaluations, and criminal histories. In re Civil Commitment of J.S.W., 371 N.J. Super. 217, 225 (App. Div. 2004); In re Civil Commitment of J.H.M., 367 N.J. Super. 599, 612 (App. Div. 2003).

Information about other acts of a committee, as well as information regarding the "official version" of the offenses for which an offender has been convicted, provides insight into behavior patterns over time and assists evaluators in coming to a diagnostic conclusion and determining risk of future dangerousness. A testifying witness may properly rely on this type of information in order "to obtain a history of what happened through the years, to see how the people involved in the offenses viewed the offenses, and to get a sense of the way [the committee] responded to these situations over time." J.H.M., 367 N.J. Super at 613.

A court may also accept the reports made by police officers or medical doctors as reliable insofar as they relate that the victim reported the history to the police officer or medical doctor. C.A., 146 N.J. at 98. There is a presumption "that police officers and medical doctors will accurately report on the statements given to them." Ibid.

In this case, the State's experts, Dr. DeCrisce and Dr. Kovack, testified as to their opinion of M.A.'s risk of re-offense based on materials in the record from his prior sexual offenses, his lengthy criminal history, police reports from the May 2020 incident, presentence reports, and interviews conducted with M.A. himself once he was brought back to the STU. These sources are the type that are reasonably relied upon by experts in the field. Significantly, the conclusions reached by the experts did not depend on the events of May 9, 2020 occurring exactly as alleged. Both of the State's experts explained that their conclusions regarding M.A.'s risk of reoffence would not change even accepting M.A.'s version of the events. The judge made a credibility determination based on the testimony of competing expert witnesses informed by material reasonably and typically relied on by experts in the field. We discern no error requiring reversal.

We also reject M.A.'s argument that the judge violated his Fifth Amendment right and statutory privilege against self-incrimination when he inferred guilt from M.A.'s decision not to talk to police. It is clear from the record and the expert testimony that M.A.'s attempts to evade arrest were cited as an example of his inability to conform to supervision required by his conditional discharge. The judge repeatedly credited the State's experts and

11

found that their testimony and reports satisfied each prong of the SVPA by clear and convincing evidence.

To the extent we have not addressed any of M.A.'s remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion.  See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1755-20