# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3351-24

IN THE MATTER OF THE
CIVIL COMMITMENT OF
C.G. SVP-452-07.

_____

Submitted January 22, 2026 – Decided February 4, 2026

Before Judges Mayer and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-452-07.

Jennifer N. Sellitti, Public Defender, attorney for appellant C.G. (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Jennifer Davenport, Acting Attorney General, attorney for respondent State of New Jersey (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Stephen Slocum, Deputy Attorney General, on the brief).

PER CURIAM

C.G. appeals from a May 20, 2025 judgment continuing his involuntary commitment to the Special Treatment Unit (STU) pursuant to the Sexually Violent Predators Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. We affirm.

In June 1980, C.G. was arrested for sexually assaulting a three-year-old child whom he was babysitting. In March 1991, C.G. was charged with sexually assaulting his teenage niece. In August 1995, C.G. was arrested for the attempted rape of a neighbor. In November 2004, C.G. was arrested for sexually assaulting a thirteen-year-old male. C.G. pleaded guilty to endangering the welfare of a child in connection with the 2004 offense, which was subsequently vacated and amended to harassment.

In addition to the foregoing sexual offenses, C.G. has an extensive criminal history for nonsexual offenses, including convictions for armed robbery, use of a firearm during a felony, defrauding the State, abduction by gunpoint, and disorderly conduct. He also has other charges not resulting in convictions.

In 2007, the State successfully petitioned to have C.G. civilly committed under the SVPA. This court affirmed C.G.'s continued civil commitment. See In re Commitment of C.E.G., No. A-0823-07 (App. Div. Nov. 12, 2009); In re Commitment of C.E.G., No. A-2953-09 (App. Div. Aug. 2, 2010); In re Commitment of C.E.G., No. A-1624-11 (App. Div. June 26, 2012), certif. denied, 213 N.J. 567 (2013); and In re Commitment of C.E.G., No. A-4228-14 (App. Div. July 10, 2017), certif. denied, 232 N.J. 136 (2018).

At the review hearing leading to the May 20, 2025 judgment, C.G., who was then sixty-three years old, refused to appear for the hearing and declined to meet with his attorney. Consequently, the judge considered the matter on the papers submitted to the court. The judge reviewed the documents, including the expert reports authored by Dr. Howard Gilman, M.D., an expert in the field of psychiatry, and Dr. Nafisa Mandani, Psy.D., an expert in the field of psychology.

Dr. Gilman reviewed an extensive list of documents, including examination reports, evaluations, treatment plans, treatment progress notes, and other relevant documents because C.G. declined to appear for an interview. Dr. Gilman summarized C.G.'s sexual offense history and nonsexual offense crimes as part of his written report. Additionally, the doctor considered C.G.'s psychiatric, medical, and personal history.

In reviewing C.G.'s progress in sex offender treatment programs, Dr. Gilman noted C.G. "has been on Treatment Refusal status throughout his time at the STU." According to Dr. Gilman, C.G. scored a three on the Static-99R, an actuarial risk assessment used to predict the risk of sexual and violent reoffense. C.G.'s score on this assessment placed him at a Risk Level III, which is an average risk to reoffend. Dr. Gilman was unable to score C.G. on the Stable-2007 instrument used to assess factors that contribute to sexual reoffense

3

risk because C.G. never participated in the interview process. Based on his review of the materials, Dr. Gilman diagnosed C.G. with pedophilic disorder, alcohol use disorder, cannabis use disorder, and antisocial personality disorder.

Dr. Gilman opined C.G. continued to be at a high risk to sexually reoffend based on the following: his "long and extensive history of criminal sexual convictions"; his "sexually reoffend[ing] despite previous legal sanctions"; his history of "[p]edophilic [d]isorder," "[a]ntisocial [p]ersonality [d]isorder," and "substance abuse"; and his failure to "mitigate[] his sexual reoffense risk through treatment." According to Dr. Gilman, C.G. "suffers from a mental abnormality that affects his cognitive, volitional, and emotional capacity such that he is highly likely to sexually reoffend if not kept under the care, control and treatment of a secure facility such as the STU."

In Dr. Mandani's report on behalf of the STU's Treatment Progress Review Committee (TPRC), she consulted with C.G.'s treatment team. According to the treatment team, C.G. attended group therapy meetings but did not participate or engage in treatment or other programming. Dr. Mandani described C.G. as a "treatment refuser." C.G. also declined to be interviewed for his annual TPRC review. Dr. Mandani reported that C.G. has declined all interviews since his arrival at the STU. Dr. Mandani stated C.G. remained focused on fighting his

A-3351-24

commitment to the STU through the legal system rather than participating in treatment. The doctor also summarized the results of the psychological testing and reached the same conclusions as Dr. Gilman. Further, Dr. Mandani diagnosed C.G. as suffering from the same conditions as diagnosed by Dr. Gilman.

Based on C.G.'s "ongoing [treatment refusal] status," Dr. Mandani, on behalf of the TPRC "recommend[ed] maintaining [C.G.] in phase 1 of treatment." According to Dr. Mandani, "[i]n light of his current static risk level, his resistance to treatment, his offense history, his unaddressed dynamic risk factors, and his general personality structure, [C.G.] remains at high risk to sexually reoffend if not confined to a secure facility such as the STU."

At the review hearing, the judge considered the documents and counsels' arguments, including the written reports from Drs. Gilman and Mandani. The judge noted C.G.'s "absolute refusal to engage in treatment," explaining "his conditions do not spontaneously remit" and "require[] sex offender treatment." The judge found "based on the diagnoses of the doctors, [and] based on [C.G.'s] history, there is . . . clear and convincing evidence that he does suffer from a mental abnormality or personality disorder." Without treatment, the judge stated C.G.'s conditions would not remit. The judge also found C.G. has continuously

5

refused treatment since his commitment to the STU in 2007. The judge concluded C.G. is "highly likely to sexually reoffend" and therefore "is in continued need of confinement at the STU."

On appeal, C.G. raises the following argument:

> GIVEN C.G.'S ADVANCE AGE AND LACK OF INSTITUTIONAL INFRACTIONS, THE TRIAL COURT ERRONEOUSLY FOUND THAT THE STATE HAD CLEARLY AND CONVINCINGLY DEMONSTRATED THAT HE WAS HIGHLY LIKELY TO REOFFEND SEXUALLY IF NOT CIVILLY COMMITTED AT A SECURE INSTITUTION.

Our review of a judgment for commitment under the SVPA is "extremely narrow." In re Civ. Commitment of R.F., 217 N.J. 152, 174 (2014) (quoting In re D.C., 146 N.J. 31, 58 (1996)). "[C]ommitting judges under the SVPA are specialists in the area," whose "expertise in the subject [is entitled to] special deference." In re Civ. Commitment of R.Z.B., 392 N.J. Super. 22, 36 (App. Div. 2007) (quoting In re Civ. Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)). A trial judge's commitment determination will be subject to modification on appeal only where "the record reveals a clear mistake." R.F., 217 N.J. at 175 (quoting D.C., 146 N.J. at 58). We give special deference to the judges' findings "because they have the 'opportunity to hear and see the

A-3351-24

witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Id. at 174 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

"The SVPA authorizes the Attorney General to initiate a court proceeding for the involuntary commitment of an individual believed to be a 'sexually violent predator' as defined by the Act." In re Commitment of W.Z., 173 N.J. 109, 120 (2002) (citing N.J.S.A. 30:4-27.28). A "sexually violent predator" is defined as someone who: (1) has been "convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or . . . charged with a sexually violent offense but found to be incompetent to stand trial;" (2) suffers "from a mental abnormality or personality disorder" predisposing him to commit acts of sexual violence; and (3) as a result of that mental abnormality or personality disorder is "likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." N.J.S.A. 30:4-27.26.

C.G.'s annual review hearing focused on the second and third prongs of the SVPA. Under the second prong, the State must prove the individual "suffers from a mental abnormality or personality disorder." R.F., 217 N.J. at 173. The SVPA does not define "personality disorder." See N.J.S.A. 30:4-27.26. However, "the nomenclature . . . is not dispositive." W.Z., 173 N.J. at 127. The

focus is on "the mental condition . . . affect[ing] an individual's ability to control his or her sexually harmful conduct."  Ibid.

"An inability to control one's sexually violent behavior is the very essence of the SVPA."  Id. at 129.  "A difficulty arises" in trying to quantify an individual's probability of reoffending by a particular "quantum of proof."  Id. at 131.  "Predictions of future dangerousness have been for some time a permitted basis for restriction of a citizen's liberty when that dangerousness is tethered to a finding of mental illness or abnormality."  Id. at 132 (citing Hubbart v. Superior Court, 969 P.2d 584, 600 n.26 (Cal. 1999)).  The inquiry is focused on an individual's "present serious difficulty with control over dangerous sexual behavior."  Id. at 132-33 (emphasis in original).

Here, the State's experts diagnosed C.G. with personality disorders.  Both experts concluded C.G.'s disorders contributed to his past decisions to offend and would not spontaneously remit without treatment.  Further, both experts noted C.G. refused treatment while at the STU.  Additionally, both experts utilized the Static-99R, which is generally accepted as a reliable tool in weighing an individual's future dangerousness in SVPA hearings.  See In re Civ. Commitment of A.Y., 458 N.J. Super. 147, 171-72 (App. Div. 2019).  Although both experts acknowledged C.G. attained an average score on the Static-99R and

considered his age as a potential mitigating factor, they found C.G.'s refusal to engage in treatment elevated his risk.

In finding the State proved the second prong under the SVPA, the judge relied on the experts' testimony diagnosing C.G. with mental and personality disorders affecting his ability to control his sexually harmful conduct. The judge found the experts were credible and their opinions were consistent with the voluminous records which they reviewed.

Under the third prong, the State must prove the individual has serious difficulty controlling sexually harmful behavior such that it is highly likely that they will not control their sexually violent behavior and will reoffend. W.Z., 173 N.J. at 132. A determination whether a person is likely to sexually reoffend "lies with the courts, not the expertise of psychiatrics or psychologists." R.F., 217 N.J. at 174 (quoting D.C., 146 N.J. at 59). "Courts must balance society's interest in protection from harmful conduct against the individual's interest in personal liberty and autonomy." Ibid. (quoting D.C., 146 N.J. at 59).

Here, the judge found C.G. would have serious difficulty controlling his sexually violent behavior given his lack of participation in any treatment while at the STU. Thus, the judge concluded C.G. would be highly likely in the foreseeable future to engage in acts of sexual violence if released. The judge's

conclusion is supported by sufficient credible evidence in the record, including the unrebutted and credible testimony of both experts.

C.G.'s argument on appeal cites his sobriety and lack of problematic conduct at the STU as mitigating factors. However, the judge considered those factors and determined any mitigating circumstances presented by C.G. were outweighed by the experts' unrefuted testimony that C.G. was highly likely to sexually reoffend.

"[A] mere disagreement with the trial court's factfindings cannot be the basis for substituted factfindings by an appellate court" absent a clear mistake. R.F., 217 N.J. at 178. Here, the State's expert witnesses supplied sufficient credible evidence for the judge to conclude C.G. was highly likely to sexually reoffend if released.

Having reviewed the record, we are satisfied the judge properly concluded the State proved by clear and convincing evidence each of the elements for C.G.'s continued civil commitment under the SVPA.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division